Holdcroft Transportation Company, a corporation, v. Commissioner.
Holdcroft Transp. Co. v. Commissioner
Docket No. 2180.
United States Tax Court
1945 Tax Ct. Memo LEXIS 200; 4 T.C.M. (CCH) 508; T.C.M. (RIA) 45167; May 10, 1945
Louis S. Goldberg, Esq., 305 Commerce Bldg., Sioux City, Ia., for the petitioner. Roy C. Hormberg, Esq., for the respondent. TURNER Memorandum Opinion TURNER, Judge: The respondent determined deficiencies in income and declared value excess profits taxes against the petitioner for the fiscal year ended October 31, 1940, in the respective amounts of $1,438.37 and $334.86. Minor adjustments set forth in the notice of deficiency are not contested. The amount of income tax in controversy is $1,055.04. The only question is whether the payment of $7,860.86 by petitioner *201 in settlement of claims against its predecessor, a partnership, is an allowable deduction, under section 23 (a) of the Internal Revenue Code, as ordinary and necessary expenses in carrying on its trade or business, or under section 23 (f) as a loss sustained. [The Facts] All the facts have been stipulated and are found as stipulated. Petitioner is an Iowa corporation, with its principal place of business in Sioux City, Iowa. It is engaged in the business of transportation for hire as a common and contract carrier by motor vehicle. It filed its income tax and excess profits tax return for its fiscal year ended October 31, 1940, with the Collector of Internal Revenue at Des Moines, Iowa. In and prior to January 1935, the Holdcroft Transportation Company was a partnership, with its headquarters at Sioux City, Iowa. It was engaged in the same business as petitioner, and was composed of Max Holdcroft, William S. Holdcroft and Howard H. Holdcroft. Later it was succeeded by another partnership, which included as partners the individuals named and, in addition, Mrs. W. J. Holdcroft and Mrs. Arthur Casper. This second partnership continued the name and business *202 of the first, succeeded to all its assets and assumed all its liabilities. It continued as such partnership until immediately prior to November 1, 1939, when Mrs. Arthur Casper, with the consent of her co-partners, subdivided her interest in the firm between herself and her husband, Arthur Casper, in the ratio of 57.1 units to herself and 22 units to her husband, all parties accepting the business, the assets and liabilities as they then existed. On July 20, 1939, the Secretary of State of Iowa issued to petitioner, under the name of Holdcroft Transportation Company, its corporate charter. Petitioner promptly made application to the Executive Council of the State of Iowa for permission to issue $35,000 of its capital stock in exchange for the assets of the above partnership bearing the same name, subject to its liabilities. After the usual examination and appraisements made during the following months by the Executive Council, the Executive Council on October 16, 1939, issued to petitioner its certificate of authority to issue its stock in the amount of $35,000, for the assets, subject to liens, encumbrances, and indebtedness to be assumed by petitioner. On November 1, 1939, petitioner *203 delivered its capital stock to the members of the partnership, in the names, number of shares and par value amounts, as follows: Name
Shares
Amount
H. H. Holdcroft
83.65
$ 8,365.00
W. S. Holdcroft
67.55
6,755.00
Mrs. W. J. Holdcroft
74.20
7,420.00
M. R. Holdcroft
45.50
4,550.00
Arthur Casper
22.00
2,200.00
Mrs. Arthur Casper
57.10
5,710.00
350
$35,000.00 The shares of petitioner were so issued to the members of the partnership in amounts exactly in proportion to their partnership interests. Concurrently with the delivery of the stock on November 1, 1939, petitioner received from the partnership its entire business and all its assets, subject to all its liabilities, petitioner to assume and pay all liabilities incident to the partnership business, including liability for damages then pending in court, more full identified later herein. The former partners were then in control of petitioner in the same proportions as they had formerly controlled the partnership. No other capital stock or other securities were issued to any person, other than as stated, at any time material herein. The issuance of the $35,000 of its stock and the assumption *204 of the liabilities was payment in full for all the partnership business and assets. No gain or loss to any of the partners was either claimed or recognized on such transfer. The opening balance sheet of petitioner is identical with the closing balance sheet of the partnership, effect being given to the subdivision of the interest of Mrs. Arthur Casper with her husband. No increases or decreases in assets or liabilities were made, the basis of the partnership being carried over intact as the basis for the corporation. The balance sheet is also substantially identical with the findings made by the Executive Council in its certificate of October 16, 1939, except for the changes necessarily incident to the active conduct of the business between the date of the examination made by the Executive Council and the date of transfer, November 1, 1939. Such changes were neither substantial nor material. In none of the balance sheets, either for the partnership or for the corporation, was there included any liability or any reserve for any accrual to pay any part of any liabilities related to the claims then pending in court against the predecessor partnership. Petitioner's corporate officers, *205 beginning November 1, 1939, were as follows: President, H. H. Holdcroft; vice president, Mrs. W. J. Holdcroft; secretary-treasurer, Mrs. Arthur Casper. Its board of directors consisted of H. H. Holdcroft, W. S. Holdcroft, M. R. (Max) Holdcroft and Mr. and Mrs. Arthur Casper. These are the same individuals who composed the predecessor partnership. Petitioner made the payments now in controversy in December 1939 and January 1940. Such payments stem from a collision that occurred on January 16, 1935, between a motor truck owned by Holdcroft Transportation Company, the predecessor partnership of petitioner, which was being driven at the time in the course of its business operations by an employee of the partnership, and an automobile in which two individuals, Gail Miller and Waldo Cass, were riding. As a result of the collision, both occupants of the automobile were injured, and Cass died three days later from the injuries sustained. A separate suit was instituted in behalf of each individual. The original notice of suit in the Cass case was served in behalf of N. C. Gray, administrator, on April 24, 1935. The action was brought against the partnership, the partners individually and *206 the driver of the truck. Baron and Bolton, attorneys, were employed by the defendants, and entered their appearance on April 29, 1935. After the disposition of certain preliminary and procedural matters, trial was had and on September 28, 1937, judgment was entered for the plaintiff for $1,209.60. On motion of the defendants, the judgment was vacated and set aside and a new trial was had. At the second trial in January 1939 the jury failed to agree. A third trial was had on April 3, 1939, which resulted in a judgment for the plaintiff, in the amount of $7,417.10. On April 25, 1939, the defendants filed objections and exceptions to instructions of the court and made a motion for a new trial. Under date of October 30, 1939, the court entered an order which, among other things, stated that the plaintiff was given the option of filing a remittitur in the amount of $3,000 or submitting to a new trial. On November 29, 1939, the plaintiff filed a remittitur in the amount stated. The petitioner, after a consultation by its directors, officers and attorneys, decided to settle the controversy, and after some further correction of the amount by the court, paid to the clerk of the court, on December 6, 1939, $4,776.08 *207 in satisfaction of the judgment and $157.77 as interest thereon. The judgment had been rendered against all defendants, including the partnership and the individuals. "Apart from the assets that had been transferred to petitioner corporation as aforesaid," the individuals were financially unable to pay the judgment. The services of the attorneys, Baron and Bolton, from and after November 1, 1939, had been rendered at the express instance and request of petitioner and for its account. Gail Miller was a minor, and on September 3, 1936, Clara Miller, as his next friend, filed suit against the same parties as those in the Cass suit, claiming damages in the amount of $17,290. Baron and Bolton were employed as attorneys for the defendants, and entered their appearance on September 14, 1936. Except for the filing of a motion to strike and for a more specific statement, nothing was done in the Miller case until December 9, 1939, when the plaintiff confessed the said motion of the defendants, filed an amendment to the petition restating the grounds of negligence and asking for judgment in the amount of $17,744. A settlement of this case was agreed to by the parties, and on January 12, 1940, the *208 court entered its order dismissing the cause as having been "fully settled." There was no trial and no judgment was ever entered. Pursuant to the terms of settlement, the petitioner made the following payments: January 16, 1940, to Clara Miller for
Gail Miller as settlement
$2,625.00
January 17, 1940, for costs
17.59
January 17, 1940, to Baron and Bolton,
Attorneys, by credits to their account
276.27
For appearance bond on December 27,
1939
15.00 The settlement was made by petitioner after consultation with its attorneys, the conclusion to settle being founded on the same considerations as those in the Cass suit. No compensation or reimbursement for any part of the payments made in the Cass and Miller suits, aggregating $7,860.86, has been received by the petitioner at any time. In its return for the fiscal year ended October 31, 1940, the petitioner deducted as "law expenses" the entire $7,860.86 paid out as shown above, and the deduction so claimed was disallowed by the respondent in his determination of the deficiency herein. The petitioner now claims that the amount in question is deductible under section 23 (a) of the Internal Revenue Code *209 as an ordinary and necessary expense in carrying on its trade or business, or as a loss sustained within the meaning of section 23 (f) of the Code. The respondent takes the position that the said expenditures constituted a part of the consideration paid by the petitioner for the assets and business of its predecessor and that they were capital expenditures, and not therefore deductible as claimed. The petitioner's argument, in effect, is that since liability under the Cass and Miller claims was still being contested at the time it acquired the assets of the predecessor partnership and assumed the partnership's liabilities, and since the existence of the liabilities and the amounts thereof were not finally determined until after such acquisition of assets and assumption of liabilities, the amounts paid in satisfaction of the said claims must be regarded as ordinary and necessary expenses of petitioner, under section 23 (a), supra, or as a loss deductible under section 23 (f), supra. In such argument we find no merit. The premise does not support the conclusion contended for. The agreed facts show that the payments made in satisfaction of the claims were made in satisfaction of liabilities *210 incurred in the course of the operations, not of the petitioner, but of its predecessor. Except as a part of the transaction wherein and whereby petitioner acquired the assets and assumed the liabilities of the predecessor partnership, there is no basis or foundation for any liability on the part of the petitioner under those claims. As a part of the consideration for the assets and business acquired, the petitioner agreed to assume, and did assume, the liabilities of the partnership, and the liabilities so assumed represent a part of the cost of the assets acquired. Obviously the petitioner was fully aware of the collision which has occurred in 1935, the claims that had been made against the predecessor partnership and its members with respect thereto and the judgment which had been entered in the Cass case. The events fixing the liability and making it the liability of the predecessor partnership had already occurred and were in no way changed by or after the transaction between the petitioner and its predecessor. The mere fact that the litigation wherein the actual existence of liability and the amount thereof was determined was finally terminated and settled after petitioner had *211 acquired the assets and business of the predecessor in no way affected the character of the liability as part consideration for the assets and business acquired or changed it into something else. In its brief, the petitioner, relying on Levitt & Sons, Inc. v. Nunan, 142 Fed. (2d) 795, argues that the payments in question were ordinary and necessary expenses because made in order to save its assets or credit, or both. Rather obviously, the case cited is not in point. The facts are distinguishable and supply no basis for application here. If the payments in question were necessary to save the petitioner's assets or credit, or both, they were no more so than would be true of any other payment of the purchase price of assets acquired for and used in petitioner's business. Being payments of part of the consideration for the acquisition of assets, they were capital expenditures, and are not deductible as ordinary and necessary expenses paid by petitioner in carrying on its trade or business, nor as a loss under section 23 (f), supra. Caldwell & Company, Inc., 26 B.T.A. 790, *212 affd., 65 Fed. (2d) 1012; F. Tinker & Sons Co., 1 B.T.A. 799; Watab Paper Co., 27 B.T.A. 488; Athol Manufacturing Co., 22 B.T.A. 105, affd., 54 Fed. (2d) 230; and Automatic Sprinkler Company of America, 27 B.T.A. 160. The Security Flour Mills Co. v. Commissioner, 321 U.S. 281, Commissioner v. United States Trust Co. of New York, 143 Fed. (2d) 243, and Dunn & McCarthy, Inc. v. Commissioner, 139 Fed. (2d) 242, cited and relied upon by petitioner, are not in point. They have nothing to do with the assumption of a liability as part of the consideration in the acquisition of assets. The stipulated facts do show, however, that from and after November 1, 1939, the services rendered by Baron and Bolton, attorneys, were rendered at the express instance and request of the petitioner and for its account. Under authority of Joshua C. Kelley, 38 B.T.A. 1292, and the cases cited therein, expenditures made by the petitioner for the services so rendered are deductible by it as ordinary and necessary expense under section 23(a), supra. The only portion of the *213 amount claimed as a deduction here paid to Baron and Bolton for services rendered was the amount of $276.27 paid in connection with the settlement of the Miller claim. The stipulation does not specifically show that this amount was paid for the services rendered from and after November 1, 1939; neither does it specifically show that any part of that amount represented payment for services rendered by Baron and Bolton for the predecessor partnership or the individual defendants. The amount is small, however, and when considered in connection with the work rather obviously done by the said attorneys, the reasonable conclusion is that the $276.27 does not cover the services rendered by them to the partnership, but the services rendered to petitioner, and under authority of Joshua C. Kelley, supra, the deduction claimed is to that extent allowed. Decision will be entered under Rule 50.