LEO A. DALY COMPANY, Appellant,

v.

RAY SMITH INDUSTRIES, INC.,
Appellee.

No. 24716.

United States Court of Appeals
Fifth Circuit.

Jan. 9, 1968.

James A. Williams, Dallas, Tex., Francis P. Matthews, Martin A. Cannon, Omaha, Neb., Bailey, Williams, Weber & Allums, Dallas, Tex., and Matthews, Kelley & Cannon, Omaha, Neb., for appellant.

Clay C. Scott, Jr., Dallas, Tex., for appellee.

Before TUTTLE, GEWIN and GODBOLD, Circuit Judges.

TUTTLE, Circuit Judge:

This was an action brought by appellee Ray Smith Industries, Inc., a Texas company, claiming under a theory of quantum meruit, that certain work which appellee performed in constructing a Post Office building for appellant Leo A. Daly Company in Belleville, Illinois, was over and above the work called for by the construction contract. Appellant removed the cause from state to federal court. The trial court, sitting without a jury, entered a judgment in favor of appellee Smith in the sum of $5,984 for "extras" not called for by the final plans and specifications and for which the trial court found appellant Daly had given its approval. In addition, the trial court awarded appellee $2,000 for reasonable

overhead expenses in connection with the performance of the extra work and the amount of $1,000 unpaid and due under the contract.

Appellant concedes the $1,000 debt under the contract but contends that the legally unassailable evidence was that the "extras" were in fact part of the appellee's obligations under the written contract; thus directives by appellant to perform such items were directives to fulfill the contract, and subsequent efforts by appellant to persuade the Post Office Department to pay extra for these items were merely good faith gestures of aid to appellee on appellant's part.

As to a large majority of the sixteen items or "extras" in question we agree that such were clearly within the contractual obligations and were not extra work for which appellee was entitled to recover.

The Government utilizes an arrangement to build post office buildings whereby it does not incur a recognizable debt. Instead of building the post office itself, the Post Office Department sets up tentative plans and specifications for a post office building and seeks bids from interested investors. These bids are basically for what the investor, here appellant Daly, will rent the post office building to the government. The successful bidder Daly then finds a builder to whom he subcontracts the construction. At the same time, the Post Office Department exercises rather strict control over the nature and structure of the building. The successful bidder is required to take the government's tentative drawings and specifications and documents and prepare a set of working drawings for the construction of the building. In this case, Daly's original builder, Texas-Midwest Construction, defaulted after the building contract had been executed and after the final plans and specifications had been drawn up by Daly from the Post Office Department tentative drawings and specifica-

tions. Contacts were then made with appellee Smith, whose bid was accepted as a replacement for Texas-Midwest.

The trial court apparently accepted appellee's contentions that only the final plans and specifications which appellee had in its possession when it bid were the basis of the contract and that anything not contained therein constituted extra work. The trial court found that the sixteen items were not within the contract. Appellee, at the trial and before this court, has consistently maintained that the function of the tentative drawings and also the specifications found in the Post Office Department Publication 39, entitled "Construction Requirements for Leased Postal Facilities—Bidder's Instructions" (herein referred to as P.O.D. 39), was only to serve as a guideline in preparing the final plans and specifications.

We find this view to be a clearly erroneous reading of the contract. It is self-evident from the nature of the final plans and specifications that they are but an architectural skeleton, though naturally a complex one, whose flesh is to be supplied by other sources, especially P.O.D. 39, to which a multitude of reference directives are given in the final plans and specifications themselves. In addition, there is readily apparent on the face of the final plans and specifications this statement under "Notes":

> "All works shall comply with P.O.D. Publication 39 Specifications. 'Bidder's Instructions—Construction Requirements for Leased Postal Facilities,' dated July, 1961. In case of a difference between the drawing and the specifications, the drawing shall govern."

Moreover, besides having notice of P.O.D. 39 and its importance through the very nature of the final plans and specifications and the notes and directive references therein, when appellee's bid was solicited, there accompanied these final plans and specifications the introductory and soliciting letter of appellant

Leo A. Daly Co., which pointedly stated the following:

"We would be pleased to receive your bid on or before Friday, January 31, 1964 at 11:00 A.M. Central Standard Time, for the construction of this facility, and there are enclosed herewith plans and specifications upon which your bid should be made.

"When a construction award is made, the contractor will be expected to agree to construct the facility in accordance with the enclosed plans and specifications, *and also in accordance with the requirements of Post Office publication No. 39* entitled "Construction Requirements for Leased Postal Facilities," *and in accordance with preliminary plans prepared by the Post Office Department which were the basis for preparation of the final plans and specifications sent sent herewith.* Copies of Post Office Department publication 39 will be made available upon award of the contract, or the publication may be obtained from any regional Post Office Real Estate Department." (Emphasis added.)

Even more significant is the fact that the *contract itself* subsequently executed between the parties contains the following requirements:

"3. Contractor shall thereupon proceed immediately to prepare the site and to construct the facility fully and completely, all in accordance with final plans and specifications prepared * * *, Standard Detailed Drawings of the Post Office Department * * *, *and also* in accordance with *Post Office Department Publication 39* dated July, 1961, entitled "Bidders Instructions—Construction Requirements for Leased Postal Facilities" *and preliminary tentative plans prepared by the Post Office Department * * *, and any and all explanatory, limiting, or amendatory communications from the Regional Post Office Department,* Engineering Division, at Chicago, Illinois, to the architect approving the final plans and specifications to which communications the approval of said

Engineering Department are made subject." (Emphasis added.)

Finally, the "General Conditions" of the contract contain this language:

"*Article 1. CONTRACT DOCUMENTS.*

"The contract includes the AGREEMENT, these GENERAL CONDITIONS, preliminary drawings * * *, all such drawings prepared by the U. S. Post Office Department for the Belleville, Illinois Post Office, Standard U. S. Post Office Detailed Drawings referred to in the specifications, Post Office Department Publication 39–A, the final drawings, plans and specifications, and comments of the Regional Office of the Post Office Department pertaining thereto."

Concluding, as we must, that P.O.D. 39, the tentative drawings, and amendatory letters and the like were part of the bid and contract, an examination of the sixteen allegedly "extra" items is necessary in order to determine whether they were called for by the contract or were truly extra work approved by appellant Daly.

The record and the exhibits clearly demonstrate that the following five items were required by P.O.D. 39 and, therefore, were not extras, and appellee is not entitled to recover for costs and overhead expenses as to these items: Items One (Low Water Cutoff, $186), Two (Water Cooler, $35), Three (Convectors, $856), Ten (Insulation, $528), and Eleven (Photographs and Negatives, $144).

Item Four (Air Relief Domes Through Roof Rather Than Through Wall Plus Masonry to Fill Wall, $2,214) was governed by the contract clause concerning explanatory, limiting, or amendatory communications from the Post Office Department. Such communications had been sent to appellee's predecessor Texas-Midwest and were forwarded to appellee upon its request after execution of the contract, and before work on the building proper had commenced. Appellee ignored such directions therein

and is not entitled to recovery for this cost item.

Item Thirteen (Install Scale, $68) was required by Note 34 of the tentative plans and, therefore, was not an "extra."

Item Six (Face Brick Addition in Post Master's Office, $500) was not in the final plans and specifications but appellee was under some pressure by the local post master to include the item. It is apparent from the Regional Post Office Department letter to appellee that such was done contrary to instructions that called for a submission of suggestions. Witness Stanley, a Post Office Department engineer, testified that appellee disregarded instructions given him by telephone and that Stanley strongly advised the removal of the item and if such was impossible there would be efforts to obtain extra funds for appellee but there would be no promise of such forthcoming. Stanley further testified that appellee's president Smith replied that appellee would take its chances. Smith testified that appellant's vice-president Williamson had told Smith that the local post master "had to have" this item and would go to great lengths to get it and indicated to Smith that appellee should work out an arrangement satisfactory to the post master. Smith testified that the decision to go ahead was taken in conjunction with conversations with Williamson but was basically his own. Such work was not authorized by the Post Office Department itself, but the trial court's determination that such was authorized extra work by appellant does not seem clearly erroneous and appellee is entitled to recover for this item.

■ Item Seven (Increase in Depth of Retaining Wall, $225) was thought necessary by appellee and appellee departed voluntarily and without authorization from the contract specifications in an exercise of its own judgment. Such voluntary initiative without inquiry as to permission to proceed would not entitle appellee to cost recovery.

■ Item Eight (Paint Wainscot and Add Protective Bumper, $634) was a result of appellee's ignoring the Post Office Department's disapproval of appellee's proposed red brick and approval of gray. Appellee put in red brick and the Post Office Department strongly ordered appellee to "correct this deviation" and stated acceptable alternative methods. Thus appellee had to paint the red brick gray and erect a bumper guard to protect against chipping. Such a correction of error was in essence merely a fulfillment of contractual obligations and thus was not an "extra."

■ · As to Item Twelve (Paint Vault Door, $30), P.O.D. 39 requires that appellee paint "(o)rdinary interior wall surfaces." (Emphasis added.) Smith testified that appellee was to paint only doors supplied by appellee, that the vault door was supplied by the government and was the wrong color and that appellee was directed by the Post Office Department to change the color. A determination by the trial court that such item was an "extra" was not clearly erroneous.

Items Fifteen and Sixteen (Additional Guard Rails and Dock Bumpers, $93 and $189) appear to be governed by the final plans and specifications and thus appellee is not entitled to recovery.

Appellant does not offer any challenge to recovery for Items Five (Motor, $90), Nine (Paint Cooling Tower, $45) and Fourteen (Beam Installation, $47).

Appellee asked for $8,000 for overhead expenses in connection with these sixteen items and was awarded $2,000. Since the award was based on all of the items of extra work, such an amount should be scaled down pro rata to $272.

Adding the items we find as extras, totalling $812, to the scaled-down overhead expense and to the conceded $1,000 contract payment debt, the judgment below must be reduced from $8,984 to $2,084.

The judgment below is reversed and the case is remanded to the trial court for entry of a judgment in accordance with this opinion.