**UNITED STATES of America,**
**Appellant,**

**v.**

**Philip K. SMITH et al., Appellees.**

**UNITED STATES of America,**
**Appellant,**

**v.**

**McIVER & SMITH FABRICATORS,**
**INC., Appellee.**

**Nos. 25623, 26135.**

United States Court of Appeals
Fifth Circuit.

Sept. 22, 1969.

Rehearing Denied Oct. 16, 1969.

Further Rehearing Denied Nov. 17, 1969.

Mitchell Rogovin, Asst. Atty. Gen., Richard C. Pugh, Acting Asst. Atty. Gen., Lee A. Jackson, Meyer Rothwacks, Harry Marselli, William A. Friedlander, Robert J. Campbell, Attys., Dept. of Justice, Washington, D. C., John O. Jones, Atty., Tax Division, Dept. of Justice, Fort Worth, Tex., Morton L. Susman, U. S. Atty., Frank C. Cooksey, James R. Gough, Asst. U. S. Attys., Houston, Tex., for appellant.

Joseph H. Reynolds, Henry A. Sauer, Jr., Reynolds, White, Allen & Cook, Houston, Tex., for appellees.

Before THORNBERRY and SIMPSON, Circuit Judges, and CASSIBRY, District Judge.

SIMPSON, Circuit Judge:

The facts involved in these income tax refund cases were comprehensively delineated in the district court's memorandum opinion, Smith v. United States, S. D.Tex.1967, 266 F.Supp. 814. Our additional outline of the background is therefore brief.

The government's appeal arises from consolidated refund suits seeking the recovery of 1957 income taxes. One suit was instituted by McIver & Smith Fabricators, Inc., and the other by its two stockholders Benton G. Smith and Philip K. Smith. At issue is the tax treatment to be accorded a payment of $27,500 from the corporation to Charles D. Ritenour in settlement of his claim to one-fourth of the assets of a partnership, McIver and Smith Fabricators, the transferor of the corporation's assets. Prior to 1955, Benton and Philip Smith conducted a metal fabricating business in the form of a partnership under the name of McIver and Smith Fabricators. In March of 1955, Charles D. Ritenour, a former employee, discharged the previous month, instituted a suit in the Texas state court alleging that he was a partner and entitled to a one-fourth partnership interest, or in the alternative that he was entitled to $20,000 in unpaid commissions earned as a salesman.

On September 1, 1956, while the Ritenour litigation was pending, the Smiths incorporated the partnership's business. The new corporation acquired all the partnership's operating assets except several acres of land, and the plant building thereon, which were retained by the partnership and leased to the corporation. On June 5, 1957, judgment was entered in the state court proceeding which awarded to Ritenour all the relief sought, but in the alternative. Ritenour elected to proceed under that portion of the judgment which entitled him to a one-fourth partnership interest and which appointed a receiver to take possession of all the properties owned by the partnership as it existed on February 15, 1955 for the purpose of selling and dividing the assets. The judgment directed that the receiver take possession upon filing bond. The judgment ran only against the two Smiths individually and the partnership. It was not against the corporation. The next day, the Smiths met with their attorney and accountants, who advised them that the receiver appointed by the state court could reach the partnership assets in the hands of the corporation. Accordingly, it was determined that a settlement with Ritenour was necessary to save the business, and on June 7, 1967, a settlement agreement was reached with Ritenour

for $27,500, which was paid by the corporation.

On its 1957 corporate tax return, the corporation deducted as an ordinary and necessary business expense $23,971.98, that portion of the $27,500 over and above $3,528.02, which was indisputably due Ritenour for unpaid salary. The Smith brothers included in their personal tax returns the $3,528.02, concededly due Ritenour, as a constructive dividend, but failed to include the $23,971.98. This latter sum was claimed on the corporation return as an ordinary and necessary business expense. The Commissioner disallowed the corporation's claimed business deduction in the amount of $23,971.98 and determined that the entire payment to Ritenour was a constructive dividend to the Smiths. In the taxpayers' suits for refund, the district court, sitting without a jury, held against the government on both issues, ruling that there had been no constructive dividend to the Smiths and that the corporation was entitled to its claimed business deduction, and the government brought this consolidated appeal. We remand for further proceedings below.

## I.

### *Constructive Dividend*

The district court found that the corporation assumed all of the liabilities of the partnership. The government concedes that a discharge of a bona fide preexisting corporate obligation assumed in connection with the acquisition of corporate property is not a dividend. Consequently, if the district court was correct in its determination that the corporation assumed all of the liabilities of the partnership, it was also correct in holding that the settlement payment was not a constructive dividend.

The assumption of liabilities question was raised for the first time during the trial of the taxpayers' refund suit. The issue had never been presented previously, either in the refund suit pleadings or in the proceedings before the Commissioner. In fact, the essential theory of the taxpayers had consistently been that the corporation had to settle because the receiver would occupy the partnership-held property and the corporation would lose business on unfilled orders and be forced to move to another plant location. The argument followed that the payment was consequently an ordinary and necessary expense. Title 26, U.S.C., Sec. 162.

■ Except for the fact that the assumption issue arose so late in the proceedings, we would reverse and render on the basis that the taxpayers failed to sustain their burden of proof and that the finding of assumption of liability is "clearly erroneous". Rule 52(a), F.R. Civ.P. The self-serving testimony of the Smiths and the vague and incomplete testimony of their accountant provide the only evidentiary support for the conclusional finding that the corporation assumed all of the liabilities of the partnership. The documents introduced are completely unrevealing as to what indebtedness the corporation assumed, or whether it assumed any. Thus the facts surrounding the incorporation must be fully developed before an intelligent decision can be reached as to what liabilities the corporation did or did not assume. The district court should then make full findings in this respect. The evidence in the present record before us is too inconclusive and unsatisfactory for us to permit the present finding as to the assumption issue to stand.

Further, we are convinced that the failure of the parties to formulate adversary issues and thus to place proper emphasis upon the assumption question caused the trial court to overlook its crucial importance. The district court in its opinion, supra, 266 F.Supp. at 817, 820, concluded almost as a matter of course that the corporation assumed all of the liabilities of the partnership. No supporting evidence for the finding was alluded to. We are left in serious doubt as to whether the trial judge would have treated the problem so lightly or reached the same conclusion had counsel had an opportunity to develop the facts fully.

We conclude that proper disposition requires remand for a full factual determination of the assumption issue by the district court. In this manner both parties will have the full day in court to which they are entitled.

If on remand and after a full hearing on the assumption question, the trial court finds that the corporation did indeed assume all of the liabilities of the partnership, the trial court should find for the taxpayers on the constructive dividend issue. If, however, the trial court concludes that the taxpayers fail to meet their burden on the assumption issue, then the remaining points raised on this appeal by the government will have to be considered. Consequently, we will discuss the constructive dividend question as if the corporation did not assume the contingent liability to Ritenour.

Absent a finding of an assumption of partnership liability by the corporation, there is no legal basis upon which the corporation can be made liable for Ritenour's claim. Neither the judgment nor the settlement agreement makes any mention of the corporation. Both instruments speak in terms of liability of the Smiths individually and as partners. We do not believe that such omissions were accidental.[1] The basis of Ritenour's claim was that his unpaid commissions which the jury found to total over $21,000 constituted a purchase of a one-fourth interest in the partnership. Thus it is clear that the judgment was based on the Smiths' failure to pay the unpaid commissions. If the corporation did not assume liability for failure to pay this debt, then it must follow that the landholding partnership and the Smiths individually agreed to pay the Ritenour claim. Lacking any elements

of fraud or assumption by the corporation, there is no legal basis upon which the corporation could be forced to pay the liability which was incurred by the shareholder/partners before incorporation.

Before we proceed to an analysis of whether or not the payment was a constructive dividend, consideration of the applicable law is appropriate. The *crucial concept in finding a constructive dividend is that the corporation conferred an economic benefit on the stockholder without expectation of repayment.*[2] See Gibbs v. Tomlinson, 5 Cir.1966, 362 F.2d 394; Paramount-Richards Theatres v. Commissioner of Internal Revenue, 5 Cir.1946, 153 F.2d 602; Sachs v. Commissioner of Internal Revenue, 8 Cir.1960, 277 F.2d 879; Hash v. Commissioner of Internal Revenue, 4 Cir.1959, 273 F.2d 248. These cases make it clear that the "economic benefit" test is controlling in spite of the fact that the distribution may not be recorded on the corporate books as a dividend. The motive or expressed intent of the corporation is not solely determinative, and constructive dividends may be found contrary to the expressed intent of the corporation. See Gibbs v. Tomlinson, supra. Additionally, it is well settled that corporate payments in discharge of a shareholder-taxpayer's personal debts and liabilities are in the nature of constructive dividends. See Gibbs v. Tomlinson, supra; Sachs v. Commissioner of Internal Revenue, supra; Hash v. Commissioner of Internal Revenue, supra.

Further we feel that the weight to be given to the expressed intent of the corporation is necessarily lessened in the closely held corporation situation. Here, for example, the corporate direc-

---

1. We find no basis in the record for the reference of the trial court, 266 F.Supp., p. 821 to "The unfortunate oversight on the part of the draftsman in omitting the corporation's name from the agreement".

2. Section 61 of the Internal Revenue Code of 1954, Title 26, U.S.C., Sec. 61, pro-

vides that "gross income means all income from whatever source derived, including * * * dividends." Section 316(a) of the Code defines a dividend as any distribution of property made out of earnings and profits.

tors who were also the sole shareholders and the creators of the liability predictably placed in the corporate minutes statements to the effect that settlement by the corporation was essential to its continued success. In such situations courts should be guided by the skepticism expressed in Lewis v. Commissioner of Internal Revenue, 1 Cir.1949, 176 F.2d 646:

> "To seek to differentiate between 'corporate purpose' and 'shareholder purpose' is unrealistic and impractical, particularly with respect to closely held corporations. * * * The separate legal identity of these corporations should not obscure the fact that they are operated by their shareholders in a manner thought best calculated to serve the latter's interests. What is deemed best for the shareholders is deemed best for the corporation, and vice versa. * * *"

With these principles in mind, we turn to the question of whether or not the Smiths received any economic benefit from the settlement payment by the corporation. The district court held, in part, that the payment was not a constructive dividend because the shareholders received no economic benefit. The scope of our review, of course, is limited by the "clearly erroneous" rule, Rule 52(a), F.R.Civ.P. A finding is "clearly erroneous" when, though there is evidence to support a district court's finding, the appellate court, after reviewing all of the evidence, is left with the definite and firm conviction that a mistake has been made. Pennington v. Colonial Pipeline Co., 5 Cir.1968, 387 F.2d 902. We are so convinced.

The district judge held that the Smiths received no economic benefit because the state court judgment placed no obligation of payment upon the brothers. The district judge found that the Smiths were not personally obligated to pay Ritenour because the state judgment entitled Ritenour to receive 25 per cent of whatever was left from the liquidation, and because Ritenour had no right to go against the Smiths individually. The district judge determined that since the Smiths were not personally obligated by the judgment they received no economic benefit by the corporation's settlement payment. The court also dismissed the failure of the settlement agreement to mention the corporation as a mere technicality and found that the agreement obligated the corporation because it assumed all the liabilities of the partnership.

These determinations overlooked the realities present and took too narrow a view of what constitutes economic benefit. Assuming that the district court correctly determined that the Smiths were not obligated by the judgment, the Smiths directly benefitted by the corporate payment. If for example the brothers desired the settlement and if the corporation had not made the payment, either the Smiths as partners in the landholding partnership or as individuals would have had to make the payment to keep the property from being sold under the hammer. The corporation payment benefitted the Smiths because they were thereby relieved from making payment themselves. Further, if a settlement had not been reached and the property had gone into receivership the Smiths would have received proportionately smaller distributive shares due to the enforcement of the previously unrecognized partnership interest of Ritenour. Additionally, the shareholders received extra corporate benefit in that the settlement enabled the Smiths to retain title to the land held by the partnership, and to continue to collect the rent thereon from the corporation. These factors demonstrate, accepting the district court's questionable premise that the judgment did not obligate the Smiths, that the shareholders received and profited by the considerable economic benefit arising from the corporation's settlement payment.

The district court placed great emphasis on its finding that the judgment constituted a serious threat to the continued existence of the corporation. How-

ever since the court started with the premise that the corporation had assumed the liability for the Ritenour claim, it did not have to determine the question with which we are faced: Does the fact that a corporation has a legitimate purpose in making a gratuitous payment remove that payment from the constructive dividend category?

Initially, we question whether the threat to the corporation was as extensive as that found by the district court. The magnitude of the threat seems to have increased as the possibility of taxation became more real. As was stated earlier, the threat which the taxpayers first feared was that the receivership would force the corporation to move its physical operations because the landholding assets of the partnership would be seized and sold. This fear was first expressed in the corporate minutes introduced by the taxpayers which recorded statements at a meeting the day after the judgment was rendered and prior to the completion of the settlement agreement.

Only after the passage of time and after perhaps sober legal study, did the taxpayers argue that the judgment meant financial disaster because the receiver had court direction to take possession and sell all of the properties owned by the partnership as of February 15, 1965, "irrespective of the mutations or changes through which they may have passed". The taxpayers now contend that the threat of receivership meant that all of the assets of the corporation could be possessed and sold since they had previously belonged to the partnership. Importantly, no mention of such a possibility can be found in the self-serving corporate minutes previously discussed.

It is true that the state judgment directed the receiver to take possession of all the partnership assets without regard to mutation. This does not necessarily mean that the receiver would have physically attached and sold the corporate assets. An equally probable assumption is that he would have found it expedient to attach and sell the corporate stock in the hands of the Smith brothers. The stock itself indisputably reflected the fair market value of the corporate-partnership assets. This would have left the business of the corporation itself—as contrasted to the interests of the Smiths personally and as partners—unaffected and unharmed.

Conceding however some validity to the district court's finding that the corporation had a legitimate business purpose in making the settlement payment, the gratuitous payment was nonetheless a constructive dividend. We have previously discussed the role of the motivation or intent of a corporation in the constructive dividend area. See page 593. We find the case of Reade Manufacturing Co. v. United States, 3 Cir.1962, 301 F.2d 803, to be controlling in such a situation as we have discussed above hypothetically where the corporation does not assume the liabilities of the pre-existing partnership.

In that case, A. E. Staley Mfg. Co., a manufacturer of soy sauces, threatened a family partnership, its supplier of a necessary ingredient, caustic soda, with a lawsuit for defects in the soda, because users of the sauce became ill. Soon after this incident the partnership was incorporated as Reade Manufacturing Company, but the corporation did not assume the partnership's debts. The manufacturer then brought suit against the partnership. The former partners settled the suits by personally obligating themselves in the form of notes payable to A. E. Staley Mfg. Co. It was stipulated in the refund suit later brought by the corporate taxpayer (Reade) that the reason for settlement was that the directors of Reade determined that the adverse publicity from a lawsuit would constitute a threat to the continued existence of the business, and further that the directors felt that the existence of the suit adversely affected the corporate credit. The new corporation later paid the notes and sought to deduct the amount as an ordinary and necessary business expense. The Commissioner

disallowed the deduction, the deficiency was paid, and suit for refund brought. In affirming the disallowance of the deduction by the district court, the Third Circuit held that the Reade Manufacturing Company had *gratuitously* assumed the personal obligations of its shareholders in spite of the fact that that corporation admittedly had a legitimate business purpose in paying off the shareholders' notes. Although *Reade* deals with the propriety of the deduction for business expense, Title 26, U.S.C. Sec. 162, its principles apply with equal force to the constructive dividend situation before us.

To summarize, we remand for a factual determination of whether or not the corporation assumed the Ritenour liability. If the district court finds that the corporation did in truth and fact assume the contingent liability of the partners to Ritenour, it should enter a judgment for the shareholders. If no assumption is found, the payment by the corporation should be taxed as income to the shareholders because the payment constituted a constructive dividend.

## II.

### Ordinary and Necessary Business Expense

 If the district court finds that the corporation did not assume the liability of the Ritenour claim and consequently that the payment was a dividend, the payment cannot be classified as a business deduction because a dividend is not a deductible expense of a corporate taxpayer. 4A Merten's Law of Federal Income Taxation, § 25.16, p. 83. Thus, no discussion of this possibility need be undertaken here.

If, however, the district court determines on remand that the corporation assumed all of the liabilities of the partnership, the business expense deduction question must be met.

The government contends that if the district court was correct in determining that the corporation assumed the contingent liability to Ritenour in the acquisition of its operating assets from the partnership, the satisfaction of that liability was a part of the cost of the operating assets and therefore a nondeductible capital expenditure. Portland Gasoline Co. v. Commissioner, 5 Cir.1950, 181 F.2d 538; W. D. Haden Co. v. Commissioner, 5 Cir. 1948, 165 F.2d 588; Holdcroft Transp. Co. v. Commissioner of Internal Revenue, 8 Cir.1946, 153 F.2d 323.

The district court rejected this contention on the basis of the intent of the Smiths. The court found that the corporation paid the settlement in order to save its business and therefore the payment was a noncapital expenditure.

The trial court's finding was in error because it focused on the payment rather than upon the obligation which gave rise to the payment. If, as found by the district court, the corporation assumed the contingent liability to Ritenour when it was incorporated, the district court will be required to determine why the obligation was assumed.

The importance of this determination is self-evident. If the corporation at its inception assumed a contingent obligation to pay Ritenour, it is that assumption of liability which obligated the corporation and not any subsequent legitimate business purpose. In other words, the corporation did not have to pay because of the unfavorable judgment or because its directors deemed payment advisable but rather the corporation paid because it assumed the obligation when it became incorporated. Consequently we think the purposes behind the assumption should be determinative as to the question of the nature of the expenditure. As the district court correctly stated, it is the substance rather than the legal form of the transaction which governs. Commissioner of Internal Revenue v. Heininger, 320 U.S. 467, 64 S.Ct. 249, 88 L.Ed. 171 (1943). Here the substance of the transaction is based on the nature of the assumption of the liability which obligated the corporation to make the expenditure in question.

Since we are remanding the cause for a determination as to the existence of such an assumption, we deem it proper further to instruct the trial court that

should it determine that such liability was in fact assumed, the court must proceed to determine the reasons motivating the assumption. If this factual inquiry reveals a primary purpose other than acquisition of property, the court may properly allow a deduction to the corporation if all of the requirements of Title 26, U.S.C., Sec. 162, are met, i. e., whether "ordinary", "necessary", "paid or incurred during the taxable year", and "in carrying on any trade or business". See Kornhauser v. United States, 276 U.S. 145, 48 S.Ct. 219, 72 L.Ed. 505 (1928); Five Star Manufacturing Company v. Commissioner of Internal Revenue, 5 Cir.1966, 355 F.2d 724; Industrial Aggregate Co. v. United States, 8 Cir.1960, 284 F.2d 639; Levitt & Sons v. Nunan, 2 Cir.1944, 142 F.2d 795.

Reversed and remanded.

## ON PETITION FOR REHEARING

### PER CURIAM:

It is urged on us by the government's petition for rehearing that we have overlooked a controlling regulation in remanding this cause for further proceedings.

We remanded for a new hearing on the question of whether the taxpayer's corporation had assumed the liabilities of the partnership at the time of incorporation. The government contends in its petition for rehearing that judgment should have been directed for the government and that no further hearing on the assumption issue is justified.

The government argues that since this Court found that the assumption issue had not been raised in the proceedings before the Commissioner, 26 C.F.R., Sec. 301.6402.2 prohibits any consideration of that issue. The regulation reads:

"(b) Grounds set forth in claim. (1) No refund or credit will be allowed after the expiration of the statutory period of limitation applicable to the filing of a claim therefor except upon one or more of the grounds set forth in a claim filed before the expiration of such period. The claim must set forth in detail each ground upon which a credit or refund is claimed and facts sufficient to apprise the Commissioner of the exact basis thereof. The statement of the grounds and facts must be verified by a written declaration that it is made under the penalties of perjury. A claim which does not comply with this paragraph will not be considered for any purpose as a claim for refund or credit."

The regulation is a salutary one and clearly valid. See United States v. Felt & Tarrant Mfg. Co., 283 U.S. 269, 51 S.Ct. 376, 75 L.Ed. 1025 (1931). Normally it would prevent any variance between the facts and theories presented to the Commissioner and any subsequent claim for a refund. However the regulation is not ironclad and on occasion may be waived. The Supreme Court in Tucker v. Alexander, 1927, 275 U.S. 228, 48 S.Ct. 45, 72 L.Ed. 253, stated:

"The statute and the regulations must be read in the light of their purpose. They are devised, not as traps for the unwary, but for the convenience of government officials in passing upon claims for refund and in preparing for trial. Failure to observe them does not necessarily preclude recovery. If compliance is insisted upon, dismissal of the suit may be followed by a new claim for refund and another suit within the period of limitations. *If the Commissioner is not deceived or misled by the failure to describe accurately the claim, as obviously he was not here,* it may be more convenient for the government and decidely in the interest of an orderly administrative procedure that the claim should be disposed of upon it merits on a first trial without imposing upon government and taxpayer the necessity of further legal proceedings." (Emphasis added)

Admittedly, the *Tucker* case is factually distinguishable from the case at bar because there the parties stipulated to a waiver of the "no variance" provisions of Revised Statute Sec. 3226, the predecessor of the statute (Title 26, U.S.C.,

Sec. 7422(a)) and regulation under consideration.

Stipulation, of course, is not the sole circumstance under which waiver may be made. In the present case counsel for the taxpayers apparently first injected the assumption issue into the trial below of the refund suit by questioning both taxpayers and their accountant as to what liabilities the corporation assumed from the partnership. A careful review of both the appendix designated by the parties and the court reporter's original transcript reveals that the government made no objection to the raising of this issue at trial below and no later motion to strike the testimony. Actually government counsel picked up the gauntlet by cross-examining the taxpayer and his accountant on the assumption question. We conclude that the government should not be heard now to assert for the first time that proof of assumption of partnership liabilities by the corporation is at variance with the proceedings before the Commissioner and therefore cannot be considered in the taxpayers' refund suit.

It is ordered that the petition for rehearing filed in the above entitled and numbered causes be and the same is hereby denied.