Anthony J. FOYT, Jr., and Lucy A. Foyt, Plaintiffs-Appellants,

v.

UNITED STATES of America, Defendant-Appellee.

Ann W. CHILDS, Etc., Plaintiff-Appellant,

v.

UNITED STATES of America, Defendant-Appellee.

No. 76–3928
Summary Calendar.*

United States Court of Appeals, Fifth Circuit.

Oct. 19, 1977.

---

* Rule 18, 5 Cir.; see *Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al.*, 5 Cir., 1970, 431 F.2d 409.

Michael R. Waller, Houston, Tex., for plaintiffs-appellants.

James R. Gough, U. S. Atty., Houston, Tex., Richard W. Perkins, Atty., Scott P. Crampton, Asst. Atty. Gen., Jeffrey S. Blum, Atty., Tax Div., U. S. Dept. of Justice, Washington, D. C., Gilbert E. Andrews, Act. Chief, App. Section, Myron C. Baum, Act. Asst. Atty. Gen., U. S. Dept. of Justice, Washington, D. C., for U. S.

Before THORNBERRY, CLARK, and HILL, Circuit Judges.

JAMES C. HILL, Circuit Judge:

Plaintiffs filed these consolidated suits to recover income taxes and statutory interest paid or allegedly owing for the tax years 1969 and 1970. The first suit (hereinafter referred to as the Square 173 suit) concerns taxes paid for the years 1969 and 1970 by appellants Leonard H. Childs, deceased, Ann W. Childs, Anthony J. Foyt, Jr., and Lucy A. Foyt. The second suit (hereinafter referred to as the Bradco suit) concerns taxes paid for the year 1970 by the Foyts. The plaintiffs raise three issues on appeal in the Square 173 suit: (1) whether the plain-

tiffs sufficiently demonstrated that the disputed sums were properly deductible as rental expenses pursuant to I.R.C. § 162; (2) whether the plaintiffs timely notified the Commissioner of Internal Revenue of all the grounds they asserted in the district court suit for refund, thereby vesting jurisdiction in the district court to decide all asserted grounds; and (3) whether the plaintiffs sufficiently demonstrated that the Square 173 transaction was a joint venture in 1969 and 1970, thereby entitling the plaintiffs to deduct the disputed sums as business expenses pursuant to I.R.C. §§ 163 and 164. The only issue on appeal in the Bradco suit is whether the Foyts' payment of one month's delay rental under a lease naming Bradco Oil and Gas Co. as lessee was properly deductible pursuant to I.R.C. § 162.

The district court, sitting without a jury, held that the plaintiffs in the Square 173 suit were not entitled to a rental deduction. The court also held that the plaintiffs in that suit were limited to the rental expense theory of recovery, because the joint venture theory varied from the ground alleged in the claim for refund filed with the Commissioner of Internal Revenue. The court held, however, that if it had jurisdiction to consider the joint venture theory, the plaintiffs had not proved that a joint venture existed during 1969 and 1970. The district court held in the Bradco suit that the Foyts' payment to Bradco did not qualify as a deductible rental expense. We affirm the district court's holdings that the plaintiffs were not entitled to a refund in either suit. We reverse the district court's holding that, on the facts of this case, it did not have jurisdiction to decide whether the Square 173 transaction was a joint venture in 1969 and 1970.

## I. *Square 173 Suit.*

The parties do not dispute the basic facts in this suit, but rather the application of the law to these facts. In 1968, Gerald Hines, a real estate dealer and promoter, began planning to purchase certain real estate in New Orleans, Louisiana, to develop an office complex. The initial site Hines chose for the complex was a parcel of land called Square 173. Hines acquired an option to purchase certain portions of Square 173 that were subject to an existing lease with the Dixie Parking Service (hereinafter referred to as Dixie). On October 18, 1968, he exercised the option, thereby obligating himself to "sublease" the property for two years for approximately $6,980 per month and to pay the seller $1,000,000 at the end of two years. Hines took his lease subject to Dixie's lease and possession, but he acquired the right to receive Dixie's rental payments.

To raise start-up capital, Hines solicited persons to invest in the project. On October 1, 1968, the plaintiffs and three other individuals formed the partnership Square 173 Associates, of which Hines was not a member, to contribute a portion of the necessary start-up capital in exchange for Hines' promise that they would receive an interest in the project at a later date. On October 19, 1968, Hines entered into identical letter agreements with Square 173 Associates and with John P. McGovern, who was not a partner in Square 173 Associates, to "sublease" to them for five years that portion of Square 173 on which Dixie operated the parking lot. The sum of the plaintiffs' and McGovern's payments to Hines was less than the necessary amount of start-up capital.

Under the terms of the letter agreements, the investors could stop making payments at any time; all that they would lose would be the payments they already had made. If the investors made all their payments, however, Hines agreed to form a limited partnership with them when the development plans were completed and were approved. Each investor would own a limited partner's interest in the project of between three percent and six percent, depending on the size of the project and on the total area of land developed. Hines also guaranteed a return of the plaintiffs' investment.

In addition to the letter agreement, the only other document executed by Square

173 Associates was a "sublease" that required monthly payments by the partnership of $6,968.80 for a two-year period, the rental rate and term Hines agreed to when he exercised his option to purchase the land on which Dixie was located. Although the payments under both the "sublease" and the letter agreement were labeled "rentals," the investors were not entitled to receive Dixie's rental payments. Additionally, the investors did not have any right to the use or possession of the land that was the subject of the "sublease."

On September 17, 1970, the investors and Hines formed a limited partnership, Square 173 Limited. The plaintiffs were limited partners, and Hines was a general partner. The partnership articles stated that the partners of Square 173 Associates contributed their "subleases" with Hines to the new limited partnership and that the partners of Square 173 Associates would contribute specific amounts of cash in the future. The plaintiffs were given credit in the form of initial capital contributions for all the payments they made to Hines. The Square 173 Limited partnership articles contained language to the effect that the parties had for some time been making expenditures to obtain and to maintain interests in the Square 173 project. The articles also stated that the business purpose of Square 173 Limited was to acquire and to own Square 173.

Some time after the formation of Square 173 Limited, it was decided that Hines would not develop the property as originally intended. The property was sold, and the partners recouped their capital contributions to the partnership, plus all subsequent payments made after the formation of the partnership, plus seven percent of such investment. They also received 25 percent of the net profits after the distributions.

1. Section 162. TRADE OR BUSINESS EXPENSES.

   (a) *In general*—There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including—

Square 173 Associates, the original partnership of which Hines was not a member, took rental deductions for the amounts paid Hines during the years 1969 and 1970. Because Square 173 Associates did not have any income, it claimed losses for tax years 1969 and 1970. The plaintiffs claimed their shares of the alleged partnership loss on their individual tax returns for these years. The Commissioner of Internal Revenue disallowed the partnership loss claimed by the plaintiffs, determining that the plaintiffs' payments were actually contributions to capital. The plaintiffs paid the assessments and brought a refund suit in the district court.

■ The first issue in this case is whether the district court erred in holding that the plaintiffs' payments to Hines in 1969 and in 1970 do not qualify as rental payments pursuant to I.R.C. § 162(a)(3). This Court stated in *Audano v. United States*, 428 F.2d 251, 256 (5th Cir. 1970), that the deductibility of alleged rental payments is primarily a factual determination. Therefore, the district court's finding must be sustained unless it is clearly erroneous. *Commissioner v. Duberstein*, 363 U.S. 278, 291, 80 S.Ct. 1190, 4 L.Ed.2d 1218 (1960); *Commissioner v. Heininger*, 320 U.S. 467, 64 S.Ct. 249, 88 L.Ed. 171 (1943); *United States v. Smith*, 418 F.2d 589, 594 (5th Cir. 1969); Fed.R.Civ.P. 52(a). We hold that the district court's finding was not clearly erroneous.

■ To be deductible as a rental expense, the alleged rent: (1) must be an ordinary and necessary expense, (2) must be made for the continued use or possession of the property, and (3) must not give the taxpayer any title or equity in the subject property.[1] That a person binds himself to pay a specified amount of "rent" pursuant to an agreement labeled a "lease" does not bind

      \*    \*    \*    \*    \*    \*

   (3) rentals or other payments required to be made as a condition of the continued use or possession, for purposes of the trade or business, of property to which the taxpayer has not taken or is not taking title or in which he has no equity.

the Commissioner to treat that amount as rent. *Audano v. United States*, 428 F.2d 251, 256 (5th Cir. 1970); *Southeastern Canteen Co. v. Commissioner*, 410 F.2d 615, 619 (6th Cir.), *cert. denied*, 396 U.S. 833, 90 S.Ct. 89, 24 L.Ed.2d 84 (1969); *Meiselman v. Commissioner*, 300 F.2d 666 (4th Cir. 1962); *Haggard v. Commissioner*, 241 F.2d 288, 289 (9th Cir. 1956).

The facts in this case clearly indicate that the plaintiffs' payments to Hines were not rent, but rather were payments to acquire an equity interest in a partnership that was to be formed with Hines at an undetermined time in the future. The extent of the plaintiffs' interests in Square 173 Limited, the partnership formed with Hines, was determined by the amount of the plaintiffs' capital contributions, which included a credit for all "rental" payments made by the plaintiffs during 1969 and 1970. Hines paid all obligations, reported all income, and deducted all expenditures connected with the development of Square 173, including those associated with the tract "sublet" to the plaintiffs.

Additionally, the partners of Square 173 Associates had no right to use and to possess the land that they allegedly sublet. The plaintiffs urge that the property was available for Square 173 Associates' use and occupancy for the purpose pertinent to the business in which the venture was engaged, the preliminary planning and acquisition of Square 173 for commercial development. This argument, however, is unpersuasive. Hines completely controlled the venture during the years 1969 and 1970. The project was always handled in Hines' name, and Hines created and was responsible for all liabilities. The plaintiffs did not know what the money they contributed was being used for, and they did not have any control over how Hines would use the money. Therefore, before the partnership with Hines was formed in 1970, the plaintiffs were not involved in the preliminary planning of the project.

Finally, excessive rental payments do not constitute ordinary and necessary business expenses and, therefore, are not deductible. *Limericks, Inc. v. Commissioner*, 165 F.2d 483, 484 (5th Cir. 1948). Because the plaintiffs did not control the land and did not have any right to possess or to use the land, the plaintiffs' payments obviously were not reasonable in amount if considered to be rent. The plaintiffs did not even receive Dixie's rental payments. Therefore, even if the plaintiffs' payments to Hines qualified as rental payments, only that amount that represented the value of the plaintiffs' interest in the land would be deductible.

The second issue on appeal is whether the district court had jurisdiction to consider the plaintiffs' alternative contention that the Square 173 transaction was intended to take, and did take, the form of a joint venture, thereby entitling the plaintiffs to deduct the disputed sums as business expenses pursuant to I.R.C. §§ 163 and 164. The district court held that the taxpayers were limited to the rental expense theory of recovery because they did not assert the joint venture theory in their claims for refund. The district court also held that if it had jurisdiction to consider the plaintiffs' joint venture argument, a joint venture had not been created. We hold that the district court had jurisdiction to consider the joint venture theory and that the Square 173 transaction was not a joint venture between Hines and the plaintiffs during 1969 and 1970.

When the Commissioner of Internal Revenue disallowed the plaintiffs' claimed partnership loss, the plaintiffs paid the assessment and filed a protest with the District Director of the Internal Revenue Service. This protest stated that the plaintiffs were entitled to deduct the amount they paid Hines either as rental expenses incurred in a transaction entered into for profit or as a "similar deduction" arising from a joint venture between the plaintiffs and Hines.[2]

---

2. The relevant portion of the plaintiffs' protest filed with the District Director of the Internal Revenue Service states:

The question presented is whether the payments made by the partnership to Hines were deductible as "rent."

The claim for refund filed with the Commissioner of Internal Revenue, however, stated only that the plaintiffs were entitled to deduct the disputed sums as rental expenses incurred in a transaction entered into for profit.[3] The plaintiffs' district court complaints alleged that a joint venture was created with Hines when Square 173 Associates was formed in 1968 and that the plaintiffs' payments to Hines were deductible pursuant to I.R.C. §§ 163 and 164.

■ Because the United States is immune from suit unless it consents to be sued, a plaintiff must strictly comply with the statute by which the United States has consented to be sued. *United States v. Michel,* 282 U.S. 656, 51 S.Ct. 284, 75 L.Ed. 598 (1931); *Wells v. United States,* 214 F.2d 380 (5th Cir.), *cert. denied,* 348 U.S. 855, 75 S.Ct. 80, 99 L.Ed. 674 (1954); 10 Mertens, Law of Federal Income Taxation § 58A.02 (rev. ed. 1976). The relevant Treasury regulation states that no refund will be allowed except on a ground clearly stated and supported by facts sufficient to apprise the Commissioner of the exact basis of the taxpayer's claim. 26 C.F.R. 301.6402–2(b)(1). This Court has applied the regulation concerning variance with rare exception. *E. g., Southwestern Life Insurance Co. v. United States,* 560 F.2d 627 (1977); *Carmack v. Scofield,* 201 F.2d 360 (5th Cir. 1953); *Snead v. Elmore,* 59 F.2d 312 (5th Cir. 1932); *J. P. Stevens Engraving Co. v. United States,* 53 F.2d 1 (5th Cir. 1931). *But see United States v. Smith,* 418 F.2d 589 (5th Cir. 1969). The case before us is such an exception.

In *United States v. Smith,* 418 F.2d 589 (5th Cir. 1969), this Court held that although the Treasury regulation concerning variance normally precludes district courts from considering any facts or theories not included in a taxpayer's claim for refund, the regulation is not ironclad. The Court quoted from *Tucker v. Alexander,* 275 U.S. 228, 48 S.Ct. 45, 72 L.Ed. 253 (1927), in which the Supreme Court stated that the regulation must be read in light of its purpose to aid government officials in evaluating claims for refund and in preparing for trial. If a court rigidly requires absolute compliance with the regulation, the court's dismissal on this basis may be followed by a new claim for refund and another suit in the district court. The Supreme Court stated that if the Commissioner is not deceived or misled by the taxpayer's failure to describe his claim accurately, disposing of the claim on its merits in a first trial may be more convenient for the government and is decidedly in the interest of an orderly administrative procedure.

On October 19, 1968 Square 173 Associates (a Texas partnership in which the taxpayer is a partner) entered into an arms-length agreement with Gerald D. Hines whereby the partnership leased certain property in Square 173 of the First Municipal District of the City of New Orleans, Louisiana, for two years for the monthly rental fee of $6,968.80. The partnership retained the right to cancel the agreement at any time during the period of the lease.

Subsequent to the years involved in this case a joint venture agreement was formalized between the parties and became operative. Progress has been made toward consummating a project which, upon completion, should provide substantial income and profits to the taxpayer. The cost to "carry" the property in the development period was substantial and it was for the purpose of sharing these costs by both parties to the agreement that the rental payments were required. It is the taxpayer's position that the payments were in fact rental expense incurred in a transaction entered into for profit. In the alternative, the parties formed a joint venture for the purpose of developing a project on Square 173 which would have resulted in a similar deduction to the taxpayer for the years in this case.

3. The relevant portion of the plaintiffs' claim for refund states:

On October 19, 1968, Square 173 Associates, of which taxpayer is a partner, entered into an agreement with Gerald D. Hines whereby the partnership leased certain property in New Orleans, Louisiana, for two years for the monthly rental fee of $6,968.80. These payments were rental expense incurred in a transaction entered into for profit. Taxpayer's allocable portion of the partnership loss was $18,221 in 1969. This claim is filed in order to correctly reflect taxpayer's portion of the partnership loss incurred and their allocable share of the 1969 rental payments.

In *Smith*, the taxpayers' attorney first introduced a theretofore undisclosed theory for recovery in his direct examination of the taxpayers and their accountant. The government counsel did not object to introduction of this new theory and cross-examined the witnesses on the newly raised issue. This Court held that the government could not assert for the first time before the appellate court, as a defense, that the taxpayers' new theory was at variance with the proceedings before the Commissioner.

Although the government counsel in the case before us informed the trial judge that the taxpayers had not raised the joint venture theory in their claim for refund, we hold that the trial court had jurisdiction to determine the merit of this theory of recovery. The government counsel in the case before us suggested to the district court that it take all the evidence in the case, including that concerning the joint venture, to "save some time in retrying the case later on"[4] if this Court should hold that the district court had jurisdiction to determine the merit of the joint venture argument. The government counsel not only argued the law of joint venture as it applied to the facts in this case, but also cross-examined the taxpayers' witnesses concerning the legal relationship that existed between Square 173 Associates and Hines before Square 173 Limited was formed. Thus, the government was able to present its case on this issue effectively. In fact, the district court expressly held that if the joint venture theory were properly before that court, the plaintiffs failed to prove by a preponderance of the evidence that a joint venture had been created between Square 173 Associates and Hines.

We affirm the district court's alternative holding that a joint venture did not exist between Square 173 Associates and Hines during 1969 and 1970. When Square 173 Associates entered into the 1968 agreement with Hines, no time limit existed for the formation of a limited partnership with Hines. In fact, the partnership was not formed until 1970. There were no representations by Hines or discussions between the taxpayers and Hines or his representatives concerning the form of the association. Transactions concerning the project were always handled in Hines' name. He created and was responsible for all liabilities. Neither Hines nor the taxpayers filed a partnership or joint venture tax return. Hines reported all income earned from the project and took all deductions. No agreement existed for the taxpayers to share in any of the project's losses. In fact, Hines agreed to reimburse the plaintiffs for any financial losses they suffered by investing in the project. Finally, the investors did not know how the money they contributed was being used, and they did not have any control over Hines' use of the money. *See Pratt v. Commissioner*, 550 F.2d 1023 (5th Cir. 1977); *Misco-United Supply, Inc. v. Petroleum Corp.*, 462 F.2d 75 (5th Cir. 1972); *Haley v. Commissioner*, 203 F.2d 815 (5th Cir. 1953).

## II. *Bradco Suit.*

This suit involves only the Foyt plaintiffs. The parties do not dispute the basic facts in this case, but only the application of the law to the facts. Bradco Oil and Gas Co. was the lessee of an oil lease that required Bradco to pay monthly delay rentals for the privilege of deferring development of the property that was the subject of the lease. Bradco was unable to pay its delay rental in September 1970. Therefore, it contracted with the Foyts to assign the lease to them in exchange for their payment of the September delay rental. When the delay rental was due, Bradco paid it in full and billed the Foyts for that amount.

According to the agreement between Bradco and the Foyts, Bradco retained the right upon repayment of the amount of the September delay rental to reacquire $^{31}\!/_{32}$ of the lease allegedly assigned to the Foyts. The Foyts never received legal title to the lease; Bradco remained the record owner. As the parties actually executed the agreement, the Foyts retained a $^{1}\!/_{32}$ interest in the lease and received other property inter-

---

4. Record at 21.

ests from Bradco in lieu of a cash repayment.

In their income tax return for 1970, the Foyts deducted as a rental expense the amount they paid Bradco, and they listed a zero basis to represent their initial interests in these properties for income tax purposes. The Commissioner of Internal Revenue disallowed the rental deduction, determining that the payment was actually either a loan or the purchase of an oil and gas lease. The Foyts paid the assessment, filed a claim for refund, which was denied, and then filed suit in the district court.

The district court held that the Foyts were not entitled to a rental deduction for the amount they paid Bradco. The court stated that the Foyts' payment was either a loan to Bradco or the purchase of an oil and gas lease. Under the loan theory, the Foyts' payment was secured by the lease assignment; the parties to the agreement intended that Bradco repay the Foyts before they would release their security by reassigning the lease to Bradco. Bradco eventually repaid the loan by transferring to the Foyts a portion of its interest in other oil and gas leases. In consideration for the use of their money, the Foyts retained a 1/32 interest in the originally assigned lease.

Under the purchase theory, the Foyts paid an amount equal to one month's delay rental to Bradco and, in return, acquired an interest in an oil and gas lease and in other property. Thus, the payment to Bradco qualified as a capital expenditure paid for the acquisition of property. We affirm the district court's holding that the Foyts were not entitled to a rental deduction.

Although the transaction between Bradco and the Foyts was cast in terms of an assignment of a lease, the substance of a transaction rather than its form controls for tax purposes. *Knetsch v. United States*, 364 U.S. 361, 81 S.Ct. 132, 5 L.Ed.2d 128 (1960); *Gregory v. Helvering*, 293 U.S. 465, 55 S.Ct. 266, 79 L.Ed. 596 (1935). None of the evidence demonstrates that the Foyts made the payment for the privilege of deferring development of the property that was the subject of the lease. In exchange for their payment to Bradco, the Foyts received a 1/32 interest in an oil and gas lease and an interest in another lease that had a value equal to the money owed them. The mere fact that the amount paid was equal to a rental payment owed by Bradco does not demand a finding that the Foyts were paying a rental expense of their own. Applying the clearly erroneous standard to the district court's findings, we affirm.

AFFIRMED in part; REVERSED in part.