T.C. Memo. 1999-23

UNITED STATES TAX COURT

WILLIAM N. AND BETH ANN KATSAROS, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 25679-96.                    Filed January 29, 1999.

William N. Katsaros, pro se.

<u>Christian A. Speck</u>, for respondent.

MEMORANDUM OPINION

DEAN, <u>Special Trial Judge</u>:  This case was heard pursuant to
the provisions of section 7443A and Rules 180, 181, and 182.[1]

Respondent determined a deficiency in petitioners' 1992
Federal income tax in the amount of $6,288, plus an addition to

---

[1]All section references are to the Internal Revenue Code in
effect for the year in issue, and all Rule references are to the
Tax Court Rules of Practice and Procedure.

tax under section 6654 in the amount of $217 and an accuracy-related penalty under section 6662(b)(1) in the amount of $130.

After concessions by both parties,[2] the issues for decision are:  (1) Whether certain corporate distributions to William Katsaros constitute loans, or compensation for services; and (2) whether petitioners are liable for an accuracy-related penalty under section 6662.

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by reference.  At the time the petition was filed, petitioners resided in Santa Rosa, California. Petitioners are husband and wife.  References to petitioner are to William Katsaros.

### Background

In 1991, petitioner and his father acquired an escrow company in Hawaii called Hawaii Island Escrow, Inc. (HIEI). Petitioner's father contributed most of the capital for the acquisition of HIEI and took 90 percent of the stock in the corporation.  Petitioner received 10 percent of the stock of HIEI and was named president of the corporation.  Although petitioner

[2]Petitioners concede they had additional rental income in the amount of $2,363 and income from a cosmetology business in the amount of $1,033 and owe self-employment tax on the cosmetology income.  Respondent concedes petitioners are not liable for the estimated tax penalty in the amount of $217, and that petitioners are not liable for the $2,119 in FICA tax determined in the notice of deficiency.

had been living and working in California, the decision was made for him to relocate to Hawaii to operate the business.

The corporation failed to thrive, and petitioner agreed to forgo his formal monthly salary until the financial status of the corporation improved. HIEI made $16,750 in "loan" payments to petitioner, however, from January through May 1992 to cover his living expenses while his salary was suspended. HIEI continued to suffer financial hardship, and the corporation was terminated on May 18, 1992. The corporation distributed an additional $10,950 to petitioner between May 18 and September 7, 1992, the day petitioner left Hawaii and returned to California.

Petitioners contend the payments from HIEI are tax-free loan proceeds, and therefore they did not include the $27,700 in income. Respondent reclassified the payments as income and adjusted petitioners' taxable income to include the $27,700 as money received as compensation for services.

## Discussion

For petitioners to exclude the amounts received from HIEI as loans, they must prove that at the time of each distribution, petitioner unconditionally intended to repay the amounts received, and HIEI unconditionally intended to require repayment. Rule 142(a); Haag v. Commissioner, 88 T.C. 604, 616 (1987). If, however, the parties actually intended the distributions to compensate petitioner for his services, as respondent contends,

the payments will be includable in income under section 61(a)(1). Paula Constr. Co. v. Commissioner, 58 T.C. 1055, 1059 (1972), affd. without published opinion 474 F.2d 1345 (5th Cir. 1973).

Because petitioner is a shareholder of HIEI, it is also possible that the distributions might be considered to be constructive dividends. Constructive dividends can be identified when value passes from the corporation to the shareholder without the shareholder's giving something of substantially equivalent value in return. United States v. Smith, 418 F.2d 589, 593 (5th Cir. 1969). Neither party alleges the distributions are constructive dividends, and we find that the record does not support such a finding. See Alterman Foods, Inc. v. United States, 505 F.2d 873, 875 (5th Cir. 1974). We therefore limit our analysis to whether there was the requisite intent for the payments to constitute compensation for services, or whether, as petitioners contend, the distributions were bona fide loans.

We note that we have always examined transactions between closely held corporations and their shareholders with special scrutiny. Electric & Neon, Inc. v. Commissioner, 56 T.C. 1324, 1339 (1971), affd. without published opinion sub nom. Jiminez v. Commissioner, 496 F.2d 876 (5th Cir. 1974). As previously stated, in deciding whether the payments were disguised compensation for services, we look to the intent of the parties. Paula Constr. Co. v. Commissioner, supra at 1059. Whether such

intent has been demonstrated is a factual question to be decided on the basis of the particular facts and circumstances of the case. Id.; Electric & Neon, Inc. v. Commissioner, supra at 1340.

Before November 1, 1991, petitioner was entitled to a monthly salary from HIEI. According to petitioner, in lieu of this salary, the corporation agreed to provide him with enough money to cover his living expenses. From January to May 1992, the corporation distributed on average approximately $3,350 per month to petitioner. From May to September 1992, the corporation distributed approximately $2,738 per month to petitioner.

While receiving these payments, petitioner continued to perform the same professional services for the corporation as he had before November 1, 1991. Petitioner used the money to sustain himself and his family until the corporation recovered financially. If ever the corporation reached stable financial ground, petitioner testified that he expected HIEI to fulfill its salary obligation to him and collect repayment of the "loans".

Petitioner knew, however, that HIEI was financially insecure. In fact, the corporation was insolvent at the time the distributions were made. Some of the distributions, $10,950, were made after the corporation had terminated its operations. It seems apparent, therefore, that whether HIEI would ever regain financial stability sufficient to resume paying petitioner's salary was questionable at best. Thus, when the distributions

were made, petitioner was aware that he might never receive additional payment from HIEI for his services in excess of the "loan" payments.

Petitioners submitted a purported copy of HIEI's minutes from a corporate meeting stated to have been held in October 1991. Petitioners also submitted a letter from HIEI's treasurer, Thomas A. Rohde, and a copy of the promissory note allegedly executed by petitioner. These three documents were submitted by petitioners to support their contention that the distributions were loans.

We decline to admit the letter from HIEI's corporate treasurer into evidence on the basis of hearsay. Fed. R. Evid. 801(c). We do, however, admit the promissory note but find that it carries little or no weight. The note was executed after the close of the taxable year 1992 and offers little as far as demonstrating petitioner's intent at the time the distributions were made.

As for the corporate minutes, even if we were to admit the document under the business record hearsay exception found in rule 803(6) of the Federal Rules of Evidence, we do not find that the document is helpful to petitioners' case. The minutes reflect that petitioner agreed to forgo his monthly salary of $4,000. While the distributions did not exactly match the amount of his salary forgone, we note that petitioner's monthly salary

of $4,000 is the pretax value.  After the income tax is deducted, the $4,000 would be reduced and would come closer to matching the distributions received by petitioner and treated as tax-free loan proceeds.  Furthermore, the minutes are not dated and are not signed by petitioner, who claims he prepared the minutes after the meeting.  Rather, the minutes allegedly contain the signature of his father (who did not appear at trial), who bears the same name as petitioner.  Thus, even if we were to admit the document, we would give it little weight.  Accordingly, we find that the $27,700 in distributions is includable in petitioners' income under section 61(a)(1) as compensation for services.

We also find that petitioners are liable for the accuracy-related penalty under section 6662(b)(1) as stated in the notice of deficiency.  Petitioners did not produce any evidence regarding the penalty, and the record does not indicate that the penalty has been conceded by respondent.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155</u>.