T.C. Memo. 2004-63

UNITED STATES TAX COURT

STEPHEN M. AND REBECCA A. KERNS, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 12728-02.               Filed March 11, 2004.

<u>Charles Wist</u> and <u>Joan Kehlhof</u>, for petitioners.

<u>John D. Faucher</u>, for respondent.

MEMORANDUM OPINION

COLVIN, <u>Judge</u>:  Respondent determined that petitioners are liable for deficiencies in Federal income tax of $3,357 for 1998 and $3,637 for 1999, and accuracy-related penalties under section 6662(a) of $671 for 1998 and $727 for 1999.

After concessions, the sole issue for decision is whether a $7,800 payment by petitioner Stephen M. Kerns's wholly owned

corporation in 1999 for a permanent seat license allowing him to buy six season tickets to Houston Texans football games was a constructive dividend to petitioners. We hold that it was.

References to petitioner are to Stephen M. Kerns. Section references are to the Internal Revenue Code in effect for the years in issue. Rule references are to the Tax Court Rules of Practice and Procedure.

## Background

The parties submitted this case fully stipulated under Rule 122.

A. Petitioners and InsurMark

Petitioners resided in Houston, Texas, when they filed their petition.

In 1998 and 1999, petitioners owned 100 percent of the stock of InsurMark, Inc., a corporation which sells annuities to insurance and financial agents. Petitioner was the president and chief executive officer of InsurMark, Inc., in 1998 and 1999 and is currently its president.

B. The Permanent Seat License

On December 31, 1999, petitioner submitted an application to the Harris County-Houston Sports Authority for a permanent seat license under which petitioner had the right to buy six season

tickets for all home games of the Houston Texans football team[1] to be played in the new football stadium (now called Reliant Stadium) that was then under construction in Houston, Texas. Petitioner listed his home address and Social Security number on the application. InsurMark paid $7,800 with the application but did not deduct this payment on its 1999 corporate income tax return.

On May 23, 2000, petitioner signed a Harris County Stadium permanent seat license agreement, under which the permanent seat license fee was payable in three installments of $7,800, totaling $23,400. Petitioner signed the agreement as "president" but did not specify the entity of which he was president. Petitioner had the exclusive right to use the seat license. He could not transfer the license before the end of May 2003 without the consent of the Harris County-Houston Sports Authority, other than to an immediate family member. Petitioner indicated in the agreement that he was not acquiring the license as an investment and that he intended to use the license himself, and not to distribute it or season tickets to others.

InsurMark also paid $7,800 for the permanent seat license in the year ending December 31, 2000, and $7,800 in the year ending December 31, 2001, for a total of $23,400 by the end of 2001.

---

[1] The Houston Texans are a member of the National Football League (NFL).

The Houston Texans football team played its first regular season home game at Reliant Stadium on August 24, 2002.

On April 4, 2003, after the petition was filed in this case, petitioner asked the Harris County-Houston Sports Authority to transfer his permanent seat license to InsurMark.

C.   Petitioners' Returns and Respondent's Determination

Petitioners filed Federal income tax returns for 1998 and 1999.  Respondent determined that petitioners had unreported income of $8,229 for 1998 and $8,916 for 1999, in the form of constructive dividends from InsurMark for its payment of their personal expenses.

## Discussion

Petitioners contend that Insurmark's purchase of the permanent seat license was not a constructive dividend to them in 1999.  They contend that the license conferred no benefit on them (and thus they received no constructive dividend) in 1999 because the Houston Texans football team (and Reliant Stadium) did not exist in 1999.  Petitioners point out that InsurMark did not deduct its $7,800 payment for the permanent seat license in 1999 and contend that a property right for which their corporation claimed no deduction and which can be used only in the future does not result in a constructive dividend to them in 1999.[2]

---

[2] We need not decide whether the burden of proof shifts to respondent under sec. 7491(a) because the facts are not in dispute and the issue is one of law.  See sec. 7491(a).

We disagree.  A shareholder receives a constructive dividend to the extent of the corporation's earnings and profits if the corporation pays a personal expense of its shareholder or the shareholder uses corporate property for a personal purpose.[3] Secs. 301(c), 316(a); Falsetti v. Commissioner, 85 T.C. 332, 356-357 (1985); Henry Schwartz Corp. v. Commissioner, 60 T.C. 728, 743-744 (1973).  If the earnings and profits requirement is met, a payment is a constructive dividend if the corporation has conferred an economic benefit on the shareholder without expectation of repayment.  United States v. Smith, 418 F.2d 589, 593 (5th Cir. 1969); Truesdell v. Commissioner, 89 T.C. 1280, 1295 (1987).  Petitioners economically benefited from InsurMark's payment of the seat license fee in 1999 because they acquired, without cost to themselves, the permanent seat license.  The fact that the football team and the stadium did not exist in 1999 did not prevent the seat license from conferring an economic benefit on petitioners; i.e., the right to buy season tickets when the Houston Texans began playing football games.

Petitioner, not InsurMark, had the exclusive right to use the seat license.  The permanent seat license agreement was between the Harris County-Houston Sports Authority and petitioner.  He could not transfer the license, other than to an

---

[3] Petitioners do not contend that InsurMark's earnings and profits were less than the amount of constructive dividends respondent determined.

immediate family member, before the end of May 2003 without the consent of the Harris County-Houston Sports Authority. In the license agreement, petitioner agreed to use the license himself, rather than to distribute it or the season tickets to others. Because petitioner held title to the seat license until 2003, InsurMark did not benefit from the license in 1999.[4]

We conclude that InsurMark's $7,800 payment in 1999 for the permanent seat license was a constructive dividend to petitioners.

<u>Decision will be</u>

<u>entered for respondent</u>.

---

[4] Petitioners do not contend, and we do not find, that the primary benefit of the permanent seat license ran to InsurMark rather than to them. Cf. <u>Hood v. Commissioner</u>, 115 T.C. 172, 180 (2000).