Appeal of F. TINKER & SONS CO.  Docket No. 1101.

1. Evidence *held* not to prove that the actual cash value of the assets of a predecessor partnership paid in to the taxpayer corporation for $55,000 par value capital stock was in excess of $55,000.

2. A corporation which acquires property from a partnership and as a part of the consideration assumes certain specified liabilities of the partnership is not entitled to deduct from gross income in its tax return for 1918 an amount paid in liquidating an unrecorded and undetermined liability.

Submitted February 2, 1925; decided March 17, 1925.

*Ellis C. Johnson, Esq.*, for the taxpayer.
*John D. Foley, Esq.*, for the Commissioner.

Before LANSDON, LITTLETON, and SMITH.

A hearing was had on this appeal on February 2, 1925. From the testimony and documentary evidence presented, the Board makes the following

FINDINGS OF FACT.

1. The taxpayer is a Pennsylvania corporation with its principal office in Pittsburgh, Pa. It was incorporated May 2, 1916, and succeeded to the business of Samuel Trethewey & Co., Ltd., a partnership, on October 1, 1916.

2. A deficiency letter was mailed to the taxpayer on October 15, 1924, which showed a deficiency in tax as follows:

| | |
|---|---|
| 1917 | $370.08 |
| 1918 | 5,561.40 |
| 1919 | 760.89 |
| 1920 | 258.33 |
| Total | 6,950.70 |

3. Under date of June 29, 1916, Samuel Trethewey & Co., Ltd., addressed a letter to F. Tinker & Sons Co. which reads as follows:

F. TINKER & SONS CO.,

GENTLEMEN : We hereby propose to sell to your company all our plant and equipment and material on hand, book accounts, contracts and assets of any nature and material, located at Fifty-seventh and Harrison Streets, Pittsburgh, Pa., subject to the payment by you of all and singular the notes, bills, accounts, checks, obligations and other liabilities of the company, and the performance and completion of those contracts for 550 full paid shares of your capital stock. Attached is schedule of the plant and equipment covered by proposition.

The liabilities of the company and accounts payable are $3,938.52, and the bills payable $9,500.

YOURS VERY TRULY.

The listed liabilities did not include the unrecorded liability for attorney's fees.

4. The balance sheet of the partnership at September 30, 1916, showed as follows:

| Assets. | Amount. | Liabilities. | Amount. |
|---|---|---|---|
| Cash | $8,510.18 | Accounts payable | $3,692.55 |
| Accounts receivable | 22,054.06 | Bills payable | 9,300.00 |
| Inventory | 13,964.43 | Capital (paid in) | 3,100.00 |
| Plant and equipment (less depreciation) | 15,152.47 | Profit and loss | 43,588.59 |
| Total | 59,681.14 | Total | 59,681.14 |

The assets of the partnership having a book net worth of $46,688.59 were transferred to the taxpayer in exchange for $55,000 par value of capital stock. At September 30, 1916, W. R. Tinker, a partner, made an appraisal of the plant and equipment and determined the value to be $42,000. The plant and equipment were placed upon the books of the corporation at October 1, 1916, at a value of $40,000. At October 1, 1916, the taxpayer sold $5,000 capital stock for $5,000 cash and issued $15,000 capital stock in the acquisition of the land upon which its plant was located, which land was worth $15,000. The balance sheet of the corporation at October 1, 1916, after the issuance of this stock, showed as follows:

| Assets. | Amount. | Liabilities. | Amount. |
|---|---|---|---|
| Cash | $13,510.18 | Accounts payable | $3,692.55 |
| Accounts receivable | 22,054.06 | Bills payable | 9,300.00 |
| Inventory | 13,964.43 | Capital stock | 75,000.00 |
| Plant and equipment | 40,000.00 | Surplus | 16,536.12 |
| Real estate | 15,000.00 | | |
| Total | 104,528.67 | Total | 104,528.67 |

5. In its tax returns for the years 1917 to 1920, inclusive, the taxpayer computed invested capital by including therein the book surplus of $16,536.12. The Commissioner has excluded from claimed invested capital this surplus.

6. In 1923 the taxpayer had an appraisal made of its plant and equipment by an appraisal engineer for the purpose of establishing the replacement values of these assets at September 30, 1916, and the amount of depreciation which they had suffered.

7. The taxpayer in acquiring the assets of the partnership agreed to liquidate the partnership liabilities, among which was an unrecorded and undetermined liability for legal services performed by H. G. Tinker from 1906 to September 30, 1916, inclusive. Tinker had never rendered a bill to the partnership for such services. He was requested to render such a bill to the corporation and, under date of December 26, 1918, he rendered the following bill:

| | | |
|---|---:|---:|
| To professional services May 1, 1906, to Dec. 31, 1917, at $600 per year | | $7,200.00 |
| Mar. 16, 1916, filing fees and bonus paid to State Treasurer | $46.67 | |
| Apr. 17, 1916, corporation seal | 2.50 | |
| Apr. 22, 1916, advertising charter in Legal Journal | 4.65 | |
| Apr. 22, 1916, advertising charter in Pittsburgh Dispatch | 4.70 | |
| Sept. 26, 1916, recording charter | 2.60 | |
| Dec. 22, 1916, recording deed F. Tinker & Sons Co | 2.50 | |
| Dec. 23, 1916, filing fees and bonus paid State Treasurer on increase of capital stock | 273.34 | |
| | | 336.96 |
| Total | | 7,536.96 |

8. The taxpayer's books of account for the years 1917 to 1920, inclusive, were kept upon an accrual basis.

### DECISION.

The determination of the Commissioner is approved.

### OPINION.

SMITH: The questions involved in this appeal are: (1) Whether the taxpayer is entitled to include in its invested capital for the tax years 1917 to 1920, inclusive, a claimed paid-in surplus of $16,536.12, and (2) whether the taxpayer is entitled to deduct from the gross income shown upon its tax return for 1918, $7,536.96 paid for legal services rendered to the predecessor partnership and to the taxpayer from the date of organization to December 31, 1917.

· The pertinent facts with respect to the claim of the taxpayer for a paid-in surplus of $16,536.12 are set forth in the findings of fact. The taxpayer was organized to succeed to the business of the partnership known as Samuel Trethewey & Co., Ltd. The net worth of the partnership as of September 30, 1916, as shown by its books of account, was $46,688.59. The books of account did not, however, show a liability to H. G. Tinker, who had served as counsel for the partnership from 1906 to the date of its dissolution in 1916, with an understanding that he should receive compensation for his services. As subsequent facts showed, this liability was approximately $6,250. Accordingly, if the books of account had correctly reflected the liabilities, the net worth of the partnership would have been only $40,438.59. The assets of the partnership were paid in to the corporation for $55,000 par value of capital stock. The Commissioner has allowed this value for the assets in the determination of invested capital. The taxpayer contends, however, that he should

have allowed a still greater amount for them. It contends that their actual cash value was $71,536.12, or $16,536.12 in excess of the par value of the shares of stock issued for them. In support of this contention the taxpayer relies upon an inventory of its plant and equipment taken by W. R. Tinker in 1916, for the purpose of determining their value to the partnership as a going concern; and also upon a retrospective appraisal taken by an appraisal engineer in 1923, for the purpose of determining the sound value of the assets in 1916.

In the taking of his inventory in 1916, W. R. Tinker went through the plant and figured what each machine was worth as an operating unit to the business. He testified that many of the machines which the partnership owned had increased greatly in value and that they were hard to secure on the market. This was especially true of lathes and metal-turning machines. He also testified that in some cases second-hand machines of this description were selling for more than they originally cost new. He found that the partnership had on hand some equipment which was not reflected in its asset accounts. This was owing to the fact that in past years certain equipment, including a grinding machine, had been built in the plant and the cost of the building of it had been charged to expense; also numerous jigs of an estimated value of $10,000, which had been made in connection with particular orders, had been charged to expense at the time they were made.

The appraisal made in 1923 was made by an appraisal engineer after a study of the books and records and an examination of the plant and equipment. He determined that the sound value of the plant and equipment at October 1, 1916, was $47,678.36.

Although the assets of the partnership paid in to the corporation in 1916 for $55,000 of its capital stock appear to have had a cash value somewhat in excess of their book value of $46,688.59 (even though in reaching that book value an unrecorded liability to H. G. Tinker was not taken into account), in the opinion of the Board the evidence does not warrant a conclusion that the actual cash value was in excess of $55,000. The evidence shows that it had been the practice of the taxpayer generally to charge the cost of machines purchased and of buildings erected to capital account. Some depreciation had been charged off, but the Board is not in possession of evidence which enables it to determine whether the amount charged off was sufficient. Some of the machines which were in use in 1916 had been in use for 20 years. On October 1, 1916, the same day upon which the $55,000 capital stock was issued to the partners for the assets of the partnership, $5,000 capital stock was sold for cash at par and $15,000 was issued for land of a claimed value of only $15,000. The fact that $20,000 of the capital stock of $75,000 was issued for assets which had a known cash value of only $20,000 furnishes some indication of the cash value of each share of capital stock which was issued for assets, for it must be assumed that all stockholders came into the corporation on the same level. We therefore are of the opinion that the evidence does not warrant a finding that the assets of the partnership paid in to the corporation for $55,000 capital stock had an actual cash value in excess of $55,000.

The taxpayer's books of account were kept upon an accrual basis. In 1918 it paid a bill of $7,536.96 (including small expenditures paid

by counsel), for legal services rendered by H. G. Tinker to the partnership from 1906 to the date of its dissolution in 1916 and to the corporation from October 1, 1916, to December 31, 1917. It claimed the deduction of the amount from the gross income returned for 1918.

It is not clear from the evidence how much of this amount was for services rendered to the taxpayer. Tinker first testified that upon organization the taxpayer fixed his salary at $720 per year and that the bill was for services rendered to the partnership. It was then testified that the bill was for services to December 31, 1917, and that the billing at the rate of $600 per year was only a rough way of charging for the services rendered. Whether the bill contained a charge for any services rendered to the corporation is not certain.

The liquidation of a liability of known or unknown amount assumed by a corporation as a part consideration for the purchase of assets is not an ordinary and necessary expense of doing business. It is a capital transaction. It is not a legal deduction from gross income. The same is true of legal expenses paid in connection with the organization of a corporation. They are capital items.

In the absence of evidence proving that some part of the bill was for services rendered to the taxpayer corporation, it must be held that no part of the $7,536.96 is a legal deduction from the gross income of the taxpayer for either 1917 or 1918 as an ordinary and necessary expense.