## Athol Manufacturing Company, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 30388.   Promulgated February 6, 1931.

*Ralph E. Tibbetts, Esq.*, for the petitioner.
*Bruce A. Low, Esq.*, for the respondent.

OPINION.

Smith: The petitioner contends that it is entitled, under the provisions of section 206 of the Revenue Act of 1924, to deduct from its

gross income of that year the net losses of its predecessor company for the first half of 1923 and for 1922. There is no dispute between the parties as to the fact of the losses or the amounts thereof. The controversy is over the question whether the petitioner here is the taxpayer entitled under the statute to the benefits of the deduction.

Section 206 of the Revenue Act of 1924 provides in part as follows:

(b) If, for any taxable year, it appears upon the production of evidence satisfactory to the Commissioner that any taxpayer has sustained a net loss, the amount thereof shall be allowed as a deduction in computing the net income of the taxpayer for the succeeding taxable year (hereinafter in this section called "second year"), and if such net loss is in excess of such net income (computed without such deduction), the amount of such excess shall be allowed as a deduction in computing the net income for the next succeeding taxable year (hereinafter in this section called "third year"); the deduction in all cases to be made under regulations prescribed by the Commissioner with the approval of the Secretary.

The evidence shows that the petitioner is a separate and distinct legal entity from its predecessor company. It was created under a new charter issued by the Commonwealth of Massachusetts in June, 1923. Its existence as a legal entity dates from that time. Upon organization it acquired the business and assets of the old company in exchange for its own shares of stock. These facts are not disputed, but the petitioner contends that for the purpose of granting the relief sought the separate legal entities should be disregarded. The burden of petitioner's argument rests upon this point.

We discussed this question in substantially similar form in *The Maytag Co.*, 17 B. T. A. 182, where we said:

So here we have corporations organized under the laws of different States and presumably having different rights and powers, and, while both had the same amount of preferred stock, there was a change in common stock from 12,201.5 shares of $100 par to 80,000 shares of no par. These changes are matters of substance and not to be lightly disregarded. See *Edward A. Langenbach*, 2 B. T. A. 777, 784. In our opinion they are conclusive against the claim that the new corporation is the same taxable entity as the old. Cf. *White House Milk Co.*, 2 B. T. A. 860, and *Sweets Co. of America*, 12 B. T. A. 1285.

It is worthy of note in passing that the petitioner's views, if accepted, would have far-reaching effects on other tax questions. The result would be that many corporations upon reorganization would be deprived of the benefits arising from a revaluation of assets acquired from predecessors. * * *

The only material difference in the facts between this case and *The Maytag Co.* case is that in the latter case the new corporation was organized in a different State from the predecessor corporation, whereas the petitioner was organized in the same State as the old company. We do not think that this fact is material in considering the question before us, that is, whether the petitioner

is "the taxpayer" that sustained the loss in the prior year. Reincorporation in another State might have resulted in a greater or lesser change in the rights and interests of the stockholders, creditors, and others, than reincorporation in the same State (see *Marr v. United States*, 268 U. S. 536), but it can not be said that the one would have been less effective than the other in creating a new legal entity. Unquestionably the intent of the parties and the consequence of their acts was to create a new corporation.

The petitioner, in his brief, relies strongly upon *Western Maryland Ry. Co.* v. *Commissioner of Internal Revenue*, 33 Fed. (2d) 695, and *Weiss* v. *Stearn*, 265 U. S. 242. These are both cases in which the courts found it necessary to disregard a change of legal entities. Neither of the cases, however, involved the section of the statute here under consideration. In *Western Maryland Ry. Co.* v. *Commissioner of Internal Revenue*, *supra*, the question was whether the new-company was entitled to deduct an amortized portion of the discount on bonds issued by the old company. The new company was a consolidated company which had taken over by agreement all the assets and liabilities of the old company. The Court held, reversing the decision of the Board, that the new company stood in the place of the old with respect to the bonds and was entitled to the deduction.

In *Weiss* v. *Stearn*, *supra*, the question was whether upon a reincorporation in the same State the stockholders received a gain upon the exchange of shares of the old company for shares of the new The court held that there was no gain meeting the definition of " income " as given in *Eisner* v. *Macomber*, 252 U. S. 189; *Towne* v. *Eisner*, 245 U. S. 418, and others.

In the instant case, the question is more limited. The quoted section of the statute clearly restricts those entitled to the benefit of the net loss provisions to " any taxpayer " who sustained a net loss. It is undeniable that the petitioner here is a separate legal entity and is a different taxpayer from its predecessor company. Cf. *Standard Silica Co.*, 22 B. T. A. 97. There is no question here of the rights of other parties and we see no requirement under the circumstances of this case for invocation of the rule pronounced in *Chicago, Milwaukee & St. Paul Railway Co.* v. *Minneapolis Civic and Commerce Association*, 247 U. S. 490, that " courts will not permit themselves to be blinded or deceived by mere forms or law but. regardless of fictions, will deal with the substance of the transaction involved as if the corporate agency did not exist and as the justice of the case may require."

The petitioner further contends that it is entitled to deduct certain amounts paid out by it in 1923 and 1924 upon the obligations of the old company. Since, however, the petitioner assumed these obliga-

tions of the old company as part consideration for the purchase of its assets, it is apparent that the amounts paid out upon such obligations are a part of the cost to the petitioner of the assets and constitute capital rather than business items, as the respondent has determined. See *Thomas H. Mastin*, 7 B. T. A. 72; affirmed in *Mastin* v. *Commissioner of Internal Revenue*, 28 Fed. (2d) 748; *Newark Milk & Cream Co.*, 10 B. T. A. 683; affirmed in *Newark Milk & Cream Co.* v. *Commissioner of Internal Revenue*, 34 Fed. (2d) 854.

In its first income tax return, which covered the period July 1 to December 31, 1923, the petitioner deducted an amount set up in its books as a reserve for bad debts. This amount was considerably in excess of the debts ascertained to be worthless in that period. In its return for 1924 the petitioner, without having obtained the consent of the Commissioner to change its method, deducted the amount of debts ascertained to be worthless and charged off within the taxable year, which amounted to considerably more than the additions to the bad debt reserve made upon the petitioner's books of account for that year.

The Commissioner, following Regulations 65, article 151, has permitted the petitioner to deduct in 1924 only the additions to its bad debt reserve shown by its books of account in that year. Article 151 of Regulations 65 reads in part as follows:

*Bad debts.*—Bad debts may be treated in either of two ways—(1) by a deduction from income in respect of debts ascertained to be worthless in whole or in part, or (2) by a deduction from income of an addition to a reserve for bad debts. Taxpayers were given an option for 1921 to select either of the methods mentioned for treating such debts. See article 151, Regulations 62. The method used in the return for 1921 must be used in returns for subsequent years and for returns under the Revenue Act of 1924 unless permission is granted by the Commissioner to change to the other method. A taxpayer filing a first return of income may select either of the two methods subject to approval by the Commissioner upon examination of the return. If the method selected is approved, it must be followed in returns for subsequent years, except as permission may be granted by the Commissioner to change to another method.

We said in *Kay Manufacturing Co.*, 18 B. T. A. 753:

\* \* \* It is our opinion that the requirement of the regulations that a taxpayer who exercised an election for 1921 as to the method of treating bad debts shall be bound by such election for all subsequent years, unless it asks the permission of the respondent to change to the other method and has a reasonable right to obtain it, is a valid exercise of discretion by the respondent.

We think that the respondent has properly held here that the petitioner, not having first obtained permission to change from the reserve method used in its prior return, may not deduct its actual bad debts in 1924. *Kay Manufacturing Co., supra; Ewald & Co.*, 18 B. T. A. 1130; *Britton Lumber Co.*, 20 B. T. A. 583; *Bonded Securities Corporation*, 20 B. T. A. 965.

It is apparent, however, that the additions to the bad debt reserve in 1924 amounting to 1 per cent of the petitioner's sales were inadequate to meet the bad debt contingencies of that year. Under the provisions of section 234 (a) (5) of the Revenue Act of 1924 a taxpayer is permitted to deduct the " debts ascertained to be worthless and charged off within the taxable year (or in the discretion of the Commissioner, a reasonable addition to a reserve for bad debts)." We think that a reasonable addition to the petitioner's reserve for bad debts in 1924 is $17,608.76, the difference between $3,286.45, the amount of the bad debt reserve on the petitioner's books at January 1, 1924, and $20,895.21, the amount of the debts which the examining agent found, and which the respondent admits, became worthless in 1924. See *Rhode Island Hospital Trust Co.* v. *Commissioner of Internal Revenue*, 29 Fed. (2d) 339; *Harry Kahn*, 17 B. T. A. 499.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*

TRUSSELL dissents.