## PORTLAND GASOLINE CO. v. COMMISSIONER OF INTERNAL REVENUE.

No. 12978.

United States Court of Appeals
Fifth Circuit.

April 8, 1950.

Clark G. Clinton, Dallas, Tex., for petitioner.

Harry Baum, Ellis N. Slack, Lee A. Jackson, Melva M. Graney, Sp. Assts. to Atty. Gen., Theron Lamar Caudle, Asst. Atty. Gen., Charles Oliphant, Chief Counsel, Bureau of Internal Revenue, W. Herman Schwatka, Special Attorney, all of Washington, D. C., for respondent.

Before HOLMES, McCORD and BORAH, Circuit Judges.

McCORD, Circuit Judge.

This appeal involves an alleged deficiency in excess profits and declared value excess profits taxes for the year 1943. Jurisdiction is here invoked under Section 1141 (a) of the Internal Revenue Code, as amended, Title 26 U.S.C.A. § 1141(a).

The question presented is whether the sum of $10,000 paid by taxpayer on a certain note in 1943 is deductible from its gross income as an ordinary and necessary business expense under Section 23(a) (1) (A) of the Internal Revenue Code, 26 U.S. C.A. § 23(a) (1) (A), or as a loss under Section 23(f) of the Code, 26 U.S.C.A. § 23(f).[1]

The material facts reveal that taxpayer, the Portland Gasoline Company, was incorporated in the State of Delaware on March 14, 1934. It is principally engaged in manufacturing and processing gasoline and its by-products at its plant near Pampa, Texas. Chester A. Sheppard has been its president since it was organized.

Several years prior to the organization of taxpayer, the Allen Gasoline Company and the Forrest E. Gilmore Company of Texas were operating as subsidiaries of the Forrest E. Gilmore Company of Delaware. Sheppard was then president of the Gilmore Company of Delaware and the Gilmore Company of Texas, and was also vice-president of the Allen Company.

---

1. Title 26 U.S.C.A. § 23(a) (1) (A) allows, as a deduction from gross income, "* * * All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business * * *."

Section 23(f) allows a further deduction for "* * * losses sustained during the taxable year and not compensated for by insurance or otherwise. * * *"

On May 15, 1930, the Allen Company borrowed $20,000 from the Western National Bank of Los Angeles, California, and gave its note for this indebtedness dated May 15, 1930, bearing 7% interest and payable August 15, 1930. Payment of this note was guaranteed by the Gilmore Company of Texas for good and valuable consideration. The proceeds of the note were divided equally between the Allen Company and the Gilmore Company of Texas, each receiving $10,000. Sometime prior to May 21, 1930, the Gilmore Company of Texas paid its $10,000 on the note to the Western Bank.

In the summer or fall of the year 1930 the plant of the Allen Company was destroyed by fire, and no insurance could be collected thereon. As a result, the Allen Company was financially unable to pay its portion of the indebtedness on the above mentioned note, and the Gilmore Company of Texas, as guarantor, became liable thereon. Thereafter, the Western Bank indorsed the note without recourse, and it later came into possession of one E. D. Ulrich sometime prior to March 14, 1934, the date taxpayer was organized.

On March 28, 1930, the Gilmore Company of Texas gave its note for $500,000, secured by a mortgage on its properties, to the Security Savings & Trust Company of Portland, Oregon. The Security Company issued trust certificates against this note and mortgage in the amount of $482,-000. E. D. Ulrich also held $18,000 worth of these trust certificates. About this time certain creditors of the Gilmore Company of Delaware brought suit against that company and made the Gilmore Company of Texas a party to the suit. The Security Company intervened in the action to protect its mortgage on the properties of the Gilmore Company of Texas.

In January, 1932, the holders of the trust certificates issued by the Security Company, and secured by the mortgage on the property of the Gilmore Company of Texas, entered into a written agreement whereby under certain stipulated conditions the property of the Gilmore Company of Texas would be acquired by a foreclosure sale, and a new corporation would be organized.

Sheppard, acting as trustee under this agreement, later bid in at foreclosure all of the property of the Gilmore Company of Texas, and received a sheriff's deed thereon on November 8, 1933. Thereafter, Sheppard handled the property as trustee until March 14, 1934, when he conveyed and transferred all of said property to taxpayer, Portland Gasoline Company, upon its organization in accordance with the aforementioned agreement. On June 1, 1934, taxpayer issued bonds in the amount of $482,000 to the holders of the trust certificates, which were secured by the mortgage on the property of the Gilmore Company of Texas.

Shortly after taxpayer was organized, E. D. Ulrich, as holder and owner of the old Allen Company note, served a demand on taxpayer to pay the balance of $10,000, plus interest, due on said note. Sheppard, as president of taxpayer, informed Ulrich that he would be paid when the bonds which had been issued were paid off. Some years later, at a meeting of the board of directors of taxpayer duly held on November 4, 1943, a resolution was passed authorizing payment of all of the interest and a portion of the principal on said note, provided Ulrich would agree to return and cancel said note. In compliance with this resolution taxpayer gave its check dated November 26, 1943, in the amount of $10,-000 payable to Ulrich, and received from him the note marked paid and a release. Taxpayer has never collected anything on this note from the Allen Company.

 We are of opinion substantial evidence supports the Tax Court's finding that the agreement to pay the note and the later payment to Ulrich was made to enable taxpayer to organize, rather than to preserve and protect its business, and was therefore a capital expenditure as distinguished from a deductible business expense. It is well settled that tax deductions are matters of legislative grace, and that in each instance a taxpayer has the burden of clearly showing it is entitled to the deduction claimed. Interstate Transit Lines v. Commissioner, 319 U.S. 590, 593, 63 S. Ct. 1279, 87 L.Ed. 1607; New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440, 54

S.Ct. 788, 78 L.Ed. 1348. Here, the evidence does not support taxpayer's contention that the note was paid to forestall Ulrich from bringing suit against it, but reveals that the original agreement with Ulrich in 1934 was effected primarily to enable the holders of the trust certificates to complete their plan for the organization of taxpayer. It therefore follows that the payment of the note to Ulrich in 1943 made pursuant to the original agreement was not an ordinary and necessary expense in the course of taxpayer's business, but must be considered solely as an organization expense. Welch v. Helvering, 290 U.S. 111, 54 S.Ct. 8, 78 L.Ed. 212; Hales-Mullaly, Inc., v. Commissioner, 10 Cir., 131 F.2d 509; McDonald v. Commissioner, 323 U.S. 57, 65 S.Ct. 96, 89 L.Ed. 68, 155 A.L.R. 119; Missouri-Kansas Pipe Line Co. v. Commissioner, 3 Cir., 148 F.2d 460.

It is without dispute that the threat of suit by Ulrich which taxpayer claims prompted the agreement to pay the note, if made, was based on an obligation on which taxpayer's predecessor corporation alone was liable. The guaranty on the note by taxpayer's predecessor was given while it was still in existence, and prior to the time taxpayer was organized or conducted any business. There is nothing in the record to rebut the presumption that taxpayer and its predecessor were different corporations with separate and distinct tax liabilities. It becomes manifest, therefore, that if taxpayer incurred any liability on the note to Ulrich by taking over its predecessor's obligations under the reorganization agreement, the later payment to Ulrich represented merely a portion of the cost of the transfer to taxpayer, and constituted a part of its capital investment. Hales-Mullaly v. Commissioner, 10 Cir., 131 F.2d 509; Holdcroft Transp. Co. v. Commissioner, 8 Cir., 153 F.2d 323; Athol Mfg. Co. v. Commissioner, 1 Cir., 54 F.2d 230; see also, Brown Fence & Wire Co. v. Commissioner, 46 B.T.A. 344; Levitt & Sons v. Commissioner, 5 T.C. 913.

█ We find no merit in the alternative contention that the payment of the Ulrich note constituted a deductible loss under Section 23(f) of the Internal Revenue Code, Title 26 U.S.C.A. § 23(f). This argument is without foundation in view of our holding that this note, if ever actually assumed by taxpayer, was a non-reimbursable liability, and represented merely a portion of the cost of taxpayer's acquisition of the properties of its predecessor. Cf. Greenspon v. Commissioner, 8 T.C. 431.

The decision of the Tax Court is affirmed.