DAVID R. WEBB COMPANY, INC., PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 14123–78.     Filed November 19, 1981.

*Richard E. Schneyer*, for the petitioner.
*Robert D. Kaiser*, for the respondent.

OPINION

SIMPSON, *Judge*: The Commissioner determined deficiencies in the petitioner's Federal income taxes of $3,048 for 1973 and $1,407 for 1974. After the settlement of some of the issues, the

---

sole issue for decision is whether payments by the petitioner in 1973 and 1974 pursuant to the petitioner's assumption of an unfunded pension liability of a predecessor corporation were ordinary and necessary business expenses, or whether such payments were capital expenditures.

All of the facts have been stipulated, and those facts are so found.

The petitioner, David R. Webb Co., Inc., is a Delaware corporation. At the time it filed its petition in this case, its principal place of business was in Edinburg, Ind. The petitioner was incorporated on or about November 8, 1972, and qualified to do business in Indiana on December 21, 1972. During the years 1973 and 1974, the petitioner used the accrual method of accounting. The petitioner filed its Federal corporate income tax returns for 1973 and 1974 with the Internal Revenue Service.

The petitioner is engaged in the manufacture and sale of wood veneer in Edinburg, Ind. For over 80 years, such business has been conducted by various predecessor corporations. In 1942, David R. Webb Co. Inc. (Webb–1), was incorporated and acquired the business. During the period 1942 through 1950, Webb–1 was a wholly owned subsidiary of Fancy Woods, Inc. Prior to 1951, the record owners of Fancy Woods, Inc., were Ferdinand Grunwald, 50 percent, and his wife, Maria Elisabeth Grunwald, 50 percent. In 1950, Victor Crossman, Mr. Grunwald's partner, demanded that 50 percent of the stock of both Fancy Woods, Inc., and Webb–1 be transferred to him in order to formalize his then-unrecorded equity investment in such corporations. Pursuant to such demand, 50 percent of the stock of each corporation was transferred to certain trusts for the benefit of Mr. Crossman and his family. Subsequent to such transfer, Mr. Grunwald entered into an employment agreement with Webb–1. Such agreement provided, in part, that in the event Mr. Grunwald died while still employed by Webb–1, Webb–1 would pay a lifetime pension to his widow in the amount of $12,700 per year. The consideration for such agreement was Mr. Grunwald's future services to Webb–1 and his agreement not to complete with such corporation.

Mr. Grunwald died on November 29, 1952, and at such time, he was employed by Webb–1. In 1953, pursuant to its employment agreement with Mr. Grunwald, Webb–1 began paying

Mrs. Grunwald her pension of $12,700 per year. From 1953 through 1966, Webb–1 paid and deducted its pension payments to Mrs. Grunwald.

In July 1966, Webb–1 sold all of its assets, properties, business, and goodwill to Rutland Railway Corp. (Rutland). The purchase price for such property was $8 million and the assumption by Rutland of all the liabilities of Webb–1 (with certain exceptions not relevant to this case). Included among the liabilities expressly assumed by Rutland was the unfunded pension liability of Webb–1 to Mrs. Grunwald.

Rutland paid Mrs. Grunwald $12,700 per year until 1969. In that year, Rutland sold the assets, properties, and goodwill of the Webb business to the Walter Reade Organization, Inc. (Reade), and that business was conducted as a division of Reade. Reade continued to pay Mrs. Grunwald's pension until 1972, when it sold its Webb division to the petitioner.

On November 15, 1972, the petitioner purchased all of the Webb division's assets, properties, business, and goodwill. The purchase price for such property was $5 million and the assumption by the petitioner of all of the Webb division's liabilities (with certain exceptions not relevant to this case). Included among the liabilities expressly assumed by the petitioner was the Webb division's unfunded pension liability to Mrs. Grunwald.

During 1973 and 1974, the petitioner's business was, in part, substantially the same business as that conducted by Webb–1 and the Webb divisions of Rutland and Reade. During 1973 and 1974, the petitioner paid, and claimed a deduction for, the $12,700 annual pension payment to Mrs. Grunwald. During such period, Mrs. Grunwald included such payments in her gross income. In his notice of deficiency, the Commissioner determined that such payments were not ordinary and necessary business expenses of the petitioner and that such payments were not deductible.

The sole issue for decision is whether the petitioner is entitled to deduct the payments made to Mrs. Grunwald during 1973 and 1974. The petitioner contends that such payments were ordinary and necessary business expenses and

that such payments were deductible, in the year paid, under section 404(a)(5) of the Internal Revenue Code of 1954.[1] The Commissioner contends that such payments were part of the price paid by the petitioner for the tangible and intangible assets of Reade's Webb division and therefore were capital expenditures. Accordingly, he argues that such payments were not ordinary and necessary business expenses and not deductible under section 404(a)(5). We agree with the Commissioner.

Under section 404(a)(5) and the regulations thereunder (see sec. 1.404(a)–12(a) and (b)(2), Income Tax Regs.), payments to a beneficiary of a deceased employee which are paid pursuant to an unfunded pension plan are deductible in the year paid, *provided* such payments meet the requirements of section 162 (or 212). For an expense to be deductible under section 162, such expense must be paid or incurred in the *taxpayer's* trade or business. Also, payments which are capital expenditures are not, by definition, ordinary and necessary business expenses within the meaning of section 162. See sec. 263.

It is well settled that the payment of an obligation of a preceding owner of property by the person acquiring such property, whether or not such obligation was fixed, contingent, or even known at the time such property was acquired, is not an ordinary and necessary business expense. Rather, *when paid*, such payment is a capital expenditure which becomes part of the cost basis of the acquired property. Such is the result irrespective of what would have been the tax character of the payment to the prior owner. *United States v. Smith*, 418 F.2d 589, 596 (5th Cir. 1969); *Portland Gasoline Co. v. Commissioner*, 181 F.2d 538, 541 (5th Cir. 1950), affg. a Memorandum Opinion of this Court; *W. D. Haden Co. v. Commissioner*, 165 F.2d 588, 591 (5th Cir. 1948), affg. on this issue a Memorandum Opinion of this Court; *Holdcroft Transportation Co. v. Commissioner*, 153 F.2d 323 (8th Cir. 1946), affg. a Memorandum Opinion of this Court; *Athol Mfg. Co. v. Commissioner*, 54 F.2d 230 (1st Cir. 1931), affg. 22 B.T.A. 105 (1931); *Brown Fence & Wire Co. v. Commissioner*, 46 B.T.A. 344 (1942); *F. S. Stimson Corp. v. Commissioner*, 38 B.T.A. 303 (1938); *Automatic Sprinkler Co. of America v. Commissioner*,

---

[1] All statutory references are to the Internal Revenue Code of 1954 as in effect during the years in issue.

27 B.T.A. 160 (1932); *Caldwell & Co. v. Commissioner*, 26 B.T.A. 790 (1932), affd. per curiam 65 F.2d 1012 (2d Cir. 1933); *F. Tinker & Sons Co. v. Commissioner*, 1 B.T.A. 799 (1925).[2]

The petitioner's payments to Mrs. Grunwald were made pursuant to its express assumption of Reade's obligation to make such payments. Such assumption was an express part of the petitioner's purchase agreement with Reade. As such, the payments to Mrs. Grunwald were capital expenditures, not ordinary and necessary business expenses and therefore are not deductible under section 404(a)(5).

The petitioner recognizes the long line of cases which disallow a current deduction for the payment of an assumed obligation. However, it contends that such cases are inapplicable to assumed pension obligations. In support of such contention, the petitioner relies on *F. & D. Rentals, Inc. v. Commissioner*, 44 T.C. 335 (1965), affd. 365 F.2d 34 (7th Cir. 1966), cert. denied 385 U.S. 1004 (1967).

In *F. & D. Rentals*, the taxpayer acquired during the year in issue the assets of its predecessor corporation and agreed to make the contributions for the entire year to two qualified pension plans maintained by the predecessor. It accrued its liability to make the entire contributions, but it failed to actually make such contributions timely.[3] However, the taxpayer argued that its assumption of its predecessor's obligations to such plans was the equivalent of a payment. Alternatively, the taxpayer argued that it should be allowed to increase the cost basis of its acquired assets by the amount of its *unpaid* obligations to the pension plans.

In that case, we held that the taxpayer's assumption of its predecessor's obligations was not the equivalent of a payment. Therefore, since the taxpayer had not made a payment to the pension plans prior to the due date of its return, it was not entitled to a deduction in the year it merely accrued its obligations. With respect to the taxpayer's alternative argument, we held that the taxpayer could not add the amount of

---

[2]See also *M. Buten & Sons, Inc. v. Commissioner*, T.C. Memo. 1972–44.

[3]Under sec. 404(a)(6), an accrual basis taxpayer may, generally, only deduct an accrued contribution to a pension plan if such contribution is actually paid on or before the time prescribed by the Code for the filing of its return for the year in which the deduction is claimed. See sec. 1.404(a)–1(c), Income Tax Regs.

its *unpaid* obligations to the pension plans to its cost basis in its acquired assets, since such a capitalization would have allowed the taxpayer to obtain indirectly (by way of depreciation or as part of its cost of goods sold) what it was denied directly "under the *only* statutory authority for deductions for contributions to pension plans—section 404." 44 T.C. at 349; emphasis in original. The Court of Appeals for the Seventh Circuit affirmed our holding, stating, in part, that "Under § 404(a) of the Code, taxpayer would have been entitled to a pension plan deduction if it had made a payment in the taxable year here in question or by the time it had filed its return." 365 F.2d at 41.

The petitioner focuses on such quoted language to argue that if the taxpayer in *F. & D. Rentals* had made timely payments with respect to its assumed obligations to the pension plans, it would have been allowed a deduction for such payments. However, in that case, neither this Court nor the Court of Appeals distinguished between the taxpayer's obligations to the pension plans which arose before and after the date it acquired its predecessor's assets, because the sole issue was whether a contribution to a pension plan could be deducted in the year in which such contribution was accrued but not paid. Since no payment was made, it was clear that no deduction was allowable. It is equally clear that the statement by the Court of Appeals was meant to indicate merely that if a timely payment had been made, the taxpayer would have been entitled to a deduction for the contributions attributable to the services performed after it acquired the business—any other reading of the statement by the Court of Appeals would be inconsistent with the long line of cases holding that the payment of an obligation of a predecessor is not an ordinary and necessary business expense.

The petitioner also relies on *H. Hamburger Co. v. Commissioner,* a Memorandum Opinion of this Court entered August 30, 1949, for the proposition that the payment of an assumed obligation by an acquiring company may constitute an ordinary and necessary business expense. However, the facts of that case are clearly distinguishable. The taxpayer in *Hamburger,* unlike the petitioner, had not assumed the obligations

which it paid, and such payments were made to protect and retain, rather than acquire, such taxpayer's business.

*Decision will be entered for the respondent.*

