117 T.C. No. 4

UNITED STATES TAX COURT

ILLINOIS TOOL WORKS, INC. & SUBSIDIARIES, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 16022-99.                    Filed July 31, 2001.

        P acquired the assets of D and assumed certain
liabilities, including the contingent liability for a
patent infringement claim.  P was subsequently held
liable for damages, interest, and court costs.

        Held:  P's payment in satisfaction of the patent
infringement liability is a cost of acquiring the
assets of D and must be capitalized in the year
incurred.

James P. Fuller, Jennifer L. Fuller, Laura K. Zeigler,

William F. Colgin, Jr., and Kenneth B. Clark, for petitioner.

Rogelio A. Villageliu, for respondent.

COHEN, Judge: Respondent determined deficiencies of $2,370,750 and $818,812, respectively, in petitioner's consolidated Federal income tax for 1992 and 1993.

After concessions, the issue for decision is whether $6,956,590 of a payment made by petitioner in satisfaction of a court judgment, based on a patent infringement claim that was brought against the acquired corporation and assumed as a contingent liability by petitioner, should be capitalized as a cost of acquisition or deducted as a business expense. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

FINDINGS OF FACT

Some of the facts have been stipulated, and the stipulated facts are incorporated in our findings by this reference. Illinois Tool Works, Inc. (petitioner) is a corporation organized and existing under the laws of the State of Delaware. At the time of the filing of the petition, petitioner's principal place of business was located in Glenview, Illinois. During 1992, petitioner and its subsidiaries filed a consolidated Federal income tax return, reported income on a calendar year basis, and used the accrual method of accounting.

In 1975, the DeVilbiss Co. (DeVilbiss) was a division of Champion Spark Plug Co. (Champion). On October 9, 1975,

Jerome H. Lemelson (Lemelson), an inventor and engineer, sent a letter to DeVilbiss offering to license certain patents, including a patent called the "'431 patent". In 1978, DeVilbiss secured a license, from the Trallfa Co. of Norway (Trallfa), to sell Trallfa robots in North America. Trallfa robots are computer-controlled hydraulically actuated paint spray devices that are designed to mimic human arm and wrist motions during painting operations. On September 17, 1979, attorneys for Lemelson sent a letter to DeVilbiss asserting that DeVilbiss was producing certain products in the industrial robot and manipulator field that might be infringing certain Lemelson patents including the '431 patent. On behalf of DeVilbiss, the director of robotic operations at DeVilbiss wrote a reply letter to Lemelson's attorneys that denied any infringement. On May 23, 1980, DeVilbiss and Trallfa entered into a new license agreement that gave DeVilbiss the right to manufacture, as well as to sell, Trallfa robots.

In 1981, Lemelson filed a lawsuit against the United States of America in the U.S. Court of Claims (Court of Claims lawsuit) alleging patent infringement for the Federal Government's purchase and use of certain robots including the Trallfa robot. Champion, as owner of DeVilbiss, entered the case as a third-party defendant. During one court session, the presiding judge stated that, after reviewing the merits, he did not believe that

Lemelson was likely to succeed on his patent infringement claim. The parties to the Court of Claims lawsuit ultimately reached a settlement that required the Federal Government to pay $5,000 to Lemelson. The Federal Government sought indemnification from Champion.

On May 13, 1985, Lemelson filed a separate lawsuit against Champion directly, as owner of DeVilbiss, in the U.S. District Court for the District of Delaware (the Lemelson lawsuit). In his petition, Lemelson alleged that the manufacture and sale of the Trallfa robot infringed several of his patents, including the '431 patent. The Lemelson lawsuit sought damages for Trallfa robots that were sold prior to 1986. On August 16, 1989, Lemelson made an offer to settle the lawsuit for $500,000, which DeVilbiss rejected.

DeVilbiss retained Mark Curran Schaffer (Schaffer), an intellectual property attorney, to represent DeVilbiss in the Lemelson lawsuit. Schaffer reviewed the patents, studied the patent file histories, performed prior art searches, and compared Lemelson's patents with the Trallfa robot. Schaffer concluded that Lemelson's patents were not infringed by the Trallfa robot and that it was unlikely that Lemelson would succeed in proving infringement. Schaffer communicated his opinion to representatives of DeVilbiss.

Larry Becker (Becker), division counsel and secretary of DeVilbiss at the time that the Lemelson lawsuit was filed, also reviewed the Lemelson lawsuit. Although Becker believed that the Lemelson lawsuit was not worth anything, he and his staff determined that the range of exposure would be between $25,000 and $500,000.

Prior to 1990, Eagle Industries, Inc. (Eagle), a company unrelated to petitioner, purchased DeVilbiss from Champion and subsequently incorporated DeVilbiss under the laws of the State of Delaware as a wholly owned subsidiary of Eagle. In 1990, petitioner entered into a purchase agreement to acquire certain assets relating to the industrial and commercial business operations of DeVilbiss. Petitioner agreed to pay $126.5 million for the assets and an additional $12.5 million for a covenant not to compete. The purchase agreement specified that, at closing, the buyer assumed certain liabilities of the seller and, in part, states:

At the Closing, Buyer shall assume:

(a) the Liabilities associated with the Companies whose Stock is being purchased hereunder;

(b) the Liabilities to the extent of the amounts actually reserved for or that are specifically noted on the February 2, 1990 Balance Sheet and the supporting documentation thereto * * *

(c) those Liabilities to the extent specifically provided for in this Agreement or to the extent

disclosed on the Schedules or Exhibits to this Agreement;

Closing was to occur after petitioner completed a due diligence review and other specified events.  The purchase agreement disclosed that DeVilbiss had created a $400,000 reserve for pending patent liability claims and legal fees expected to be incurred in litigating the Lemelson lawsuit.  After the price was set for the acquisition and during the due diligence period, DeVilbiss made disclosure to petitioner of pending lawsuits, including the Lemelson lawsuit.  DeVilbiss provided to petitioner a schedule containing the following entry:

```
CDCA                              STATE     DATE      CLAIM AMT
Lemelson, Jerome v. Champion      DE        06/19/85     Open

ACTION      Patent infringement claim - Robot Apparatus
COMMENTS    Latest settlement demand is $500,000.  Further
            discovery and trial pending.
```

During the due diligence period, Becker expressed his opinion to representatives of petitioner that he did not believe that the Lemelson lawsuit was worth anything.  Although Champion remained the named defendant in the Lemelson lawsuit, petitioner became the party in interest after petitioner acquired the assets of DeVilbiss.

During the due diligence period, representatives of petitioner, including Gary F. Anton (Anton), petitioner's director of audits; Thomas Buckman (Buckman), petitioner's vice president of patents and technology; and John Patrick O'Brien

(O'Brien), petitioner's group technology counsel, also studied the patents and formed the conclusion that the Lemelson lawsuit would most likely result in no liability exposure. Anton was the lead on-site due diligence person for petitioner's acquisition of the DeVilbiss assets, and Buckman and O'Brien were attorneys and members of the patent bar. The representatives of petitioner estimated that legal fees of approximately $400,000 would be incurred to defend the lawsuit. The "worst case scenario" that was contemplated by petitioner's representatives was that petitioner could incur a liability of between $1 million and $3 million. However, they concluded that the likelihood of this exposure was somewhere between zero and 5 percent. They believed that there was a 98- to 99-percent chance that petitioner would prevail in the patent infringement claim.

The reserve for the Lemelson lawsuit, in the course of the acquisition, was eventually set at $350,000. At the conclusion of the due diligence review, the purchase price of the DeVilbiss assets was adjusted from $126.5 million to $125.5 million. Petitioner and DeVilbiss considered the pending Lemelson lawsuit, but the lawsuit liability did not affect the adjustment in the purchase price. The acquisition closed on April 24, 1990.

After the acquisition, petitioner assumed the defense of the Lemelson lawsuit in the District Court in 1991. On January 17, 1991, the jury returned a verdict against Champion (and, thus,

against petitioner as the party in interest), finding that Champion had willfully infringed the '431 patent that was owned by Lemelson. The jury awarded damages of $4,647,905 for patent infringement and $6,295,167 for prejudgment interest. The District Court doubled the $4,647,905 damage award for patent infringement due to the jury's finding of willful infringement. The finding of willfulness was based in part on the failure of Champion (and on the failure of petitioner as the party in interest) to secure an authoritative opinion on whether the Trallfa robot violated the '431 patent until 2 months before trial.

Petitioner appealed the judgment of the District Court to the U.S. Court of Appeals for the Federal Circuit. On July 13, 1992, the Court of Appeals affirmed without published opinion the decision of the District Court, Lemelson v. Champion Spark Plug Co., 975 F.2d 869 (Fed. Cir. 1992). In 1992, after all appeals were exhausted, petitioner paid the judgment, including accumulated interest, of $17,067,339. The $17,067,339 judgment included the damages and prejudgment interest totaling $15,590,977 that were awarded by the District Court, postjudgment interest of $1,470,389.92, and court costs of $5,971.74.

OPINION

The portion of the $17,067,339 court judgment that is in issue is $6,956,590 because: (1) Petitioner capitalized $1 million in its tax return, (2) respondent conceded an allowance of $2,154,160 for postacquisition interest expense, and (3) respondent conceded a reduction of $6,956,589 for the disposal of acquisition assets. We must decide whether the $6,956,590 in dispute should be capitalized as a cost of acquisition or deducted as a business expense.

Section 162(a) provides a deduction for a taxpayer when an expenditure is: (1) An expense, (2) an ordinary expense, (3) a necessary expense, (4) incurred during the taxable year, and (5) made to carry on a trade or business. Commissioner v. Lincoln Sav. & Loan Association, 403 U.S. 345, 352-353 (1971). An expenditure is a "necessary expense" when it is appropriate or helpful to the development of a taxpayer's business. Commissioner v. Tellier, 383 U.S. 687, 689 (1966). An expenditure is an "ordinary expense" when it is "normal, usual, or customary" in the type of business involved. Deputy v. Du Pont, 308 U.S. 488, 495-496 (1940). Petitioner bears the burden of proving entitlement to the claimed deduction. Rule 142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992).

No current deduction is allowed for a capital expenditure. See sec. 263(a)(1). Section 1.263(a)-2(a), Income Tax Regs.,

includes as examples of capital expenditures "The cost of acquisition * * * of buildings, machinery and equipment, furniture and fixtures, and similar property having a useful life substantially beyond the taxable year."  (Emphasis added.) Generally, the payment of a liability of a preceding owner of property by the person acquiring such property, whether or not such liability was fixed or contingent at the time such property was acquired, is not an ordinary and necessary business expense. David R. Webb Co. v. Commissioner, 708 F.2d 1254, 1257 (7th Cir. 1983), affg. 77 T.C. 1134 (1981); Pac. Transp. Co. v. Commissioner, 483 F.2d 209 (9th Cir. 1973), vacating and remanding T.C. Memo. 1970-41; United States v. Smith, 418 F.2d 589, 596 (5th Cir. 1969); M. Buten & Sons, Inc. v. Commissioner, T.C. Memo. 1972-44.  Instead, payment of such a liability is capitalized and added to the basis of the acquired property.

Petitioner contends that the amount of the payment that was made in satisfaction of the Lemelson lawsuit should not be added to the cost basis of the property that was acquired in the asset acquisition from DeVilbiss because the payment was highly speculative and unexpected at the time of purchase.  Petitioner relies on the Tax Court's decision in Pac. Transp. Co. v. Commissioner, T.C. Memo. 1970-41, vacated and remanded 483 F.2d 209 (9th Cir. 1973).  Petitioner's alternative arguments are: (1) A payment in satisfaction of an assumed liability, which

would have been a deductible expense if it had been paid by DeVilbiss, the acquired corporation, retains its deductible character when petitioner, the acquiring corporation, becomes the party in interest and (2) as a result of petitioner's efforts in defending the Lemelson lawsuit, the final judgment amount that petitioner paid was an ordinary and necessary business expense that was directly connected to the business operations.  In support of these alternative arguments, petitioner relies on Nahey v. Commissioner, 196 F.3d 866 (7th Cir. 1999), affg. 111 T.C. 256 (1998).

Respondent maintains that the assets that petitioner received in exchange for the sales price, which included the assumed liabilities, produced a substantial benefit to petitioner in future years as the assets were used in petitioner's business. Respondent maintains that the Lemelson lawsuit was a contingent liability of DeVilbiss that was assumed, in full, by petitioner as consideration for the acquired assets of DeVilbiss. Therefore, respondent contends, regardless of whether the final amount of the liability was unexpected or remote at the time of acquisition, the total sum of the payment for the assumed contingent liability must be added to the cost basis of the property that was acquired in the asset acquisition.  Respondent relies on the Court of Appeals for the Ninth Circuit's decision

in <u>Pac. Transp. Co. v. Commissioner</u>, 483 F.2d 209 (9th Cir. 1973), vacating and remanding T.C. Memo. 1970-41.

Respondent also relies on <u>David R. Webb Co. v. Commissioner</u>, 77 T.C. 1134 (1981), affd. 708 F.2d 1254 (7th Cir. 1983), in which a taxpayer expressly assumed the obligation to make pension payments to the widow of a corporate officer for her life as part of the purchase of the assets and liabilities of a corporation. Prior to the acquisition of the corporation by the taxpayer, the corporation made the pension payments and deducted the payments as ordinary and necessary business expenses. Upon acquisition, the taxpayer continued to make the pension payments to the widow and claimed a deduction for the amount of the pension payments. This Court stated:

> It is well settled that the payment of an obligation of a preceding owner of property by the person acquiring such property, whether or not such obligation was fixed, contingent, or even known at the time such property was acquired, is not an ordinary and necessary business expense. Rather, when paid, such payment is a capital expenditure which becomes part of the cost basis of the acquired property. Such is the result irrespective of what would have been the tax character of the payment to the prior owner. <u>United States v. Smith</u>, 418 F.2d 589, 596 (5th Cir. 1969); <u>Portland Gasoline Co. v. Commissioner</u>, 181 F.2d 538, 541 (5th Cir. 1950), affg. on this issue a Memorandum Opinion of this Court; <u>W.D. Haden Co. v. Commissioner</u>, 165 F.2d 588, 591 (5th Cir. 1948). affg. on this issue a Memorandum Opinion of this Court; <u>Holdcroft Transportation Co. v. Commissioner</u>, 153 F.2d 323 (8th Cir. 1946), affg. a Memorandum Opinion of this Court; * * * [<u>Id.</u> at 1137-1138.]

On appeal, the Court of Appeals for the Seventh Circuit dismissed the taxpayer's argument that a contingent liability that was insusceptible of present valuation at the time of the acquisition could not be capitalized as a cost of acquisition. The Court of Appeals held that, when the actual amount of the contingent liability is known, the amount can be added to the cost basis of the purchased property. David R. Webb Co. v. Commissioner, 708 F.2d 1254, 1258 (7th Cir. 1983), affg. 77 T.C. 1134 (1981).

We conclude that David R. Webb Co., not Nahey v. Commissioner, supra, is applicable to the facts in this case. In Nahey, the issue was whether proceeds of litigation prosecuted to judgment were taxed as capital gains or ordinary income. The Court of Appeals held that the proceeds were ordinary income to the buyer of the corporation that had initially held the legal claim for lost corporate income. In that context, the Court noted that the character of income did not change as a result of the acquisition, stating that "what was transferred as part of a corporate acquisition was an asset that yields ordinary income". Nahey v. Commissioner, supra at 869. We are not persuaded by petitioner's attempt to extend this rationale to the present case in contravention of the consistently applied rule that payment of liabilities assumed as part of an acquisition must be capitalized.

Because we believe that <u>David R. Webb Co.</u> is the controlling authority in this case, we need not decide the dispute between the parties over the status of <u>Pac. Transp. Co. v. Commissioner</u>, <u>supra</u>.  We note, however, that the Court of Appeals, in reversing our decision, relied on two Supreme Court cases, <u>Woodward v. Commissioner</u>, 397 U.S. 572 (1970), and <u>United States v. Hilton Hotels</u>, 397 U.S. 580 (1970), decided after our Memorandum Opinion was released.

In settling on a final price for the DeVilbiss industrial and commercial assets, the possibility of incurring a liability on the patent infringement claim in the Lemelson lawsuit was considered by both petitioner and DeVilbiss.  DeVilbiss, as seller, disclosed the patent infringement claim that arose from its activities to petitioner during the due diligence period.  Petitioner, as buyer, was aware of the Lemelson lawsuit and expressly assumed the contingent liability as part of the acquisition agreement.  Both petitioner and DeVilbiss contemplated the possible exposure that might result from the Lemelson lawsuit and sought the opinion of their corporate officers.  Although the liability did not affect the negotiations or the final established purchase price, the assumed liability of the Lemelson lawsuit transferred to petitioner pursuant to the purchase agreement.

The Lemelson lawsuit, like the contingent liability in David R. Webb Co. v. Commissioner, supra, was a contingent liability that petitioner was aware of prior to the acquisition of assets and liabilities from DeVilbiss and that petitioner expressly assumed in the purchase agreement.  Additionally, the status of the Lemelson lawsuit was considered in determining the final purchase price, and petitioner created a reserve for the liability arising from the patent infringement claim.

Following David R. Webb Co., we conclude that petitioner's payment of the court judgment, which was an obligation of DeVilbiss and acquired by petitioner, whether or not such obligation was fixed, contingent, or even known at the time such property was acquired, was not an ordinary and necessary business expense.  Such payment is a capital expenditure that becomes part of the cost basis of the acquired property regardless of what would have been the tax character of the payment to the prior owner.  See David R. Webb Co. v. Commissioner, 77 T.C. at 1137-1138; see also Meredith Corp. & Subs. v. Commissioner, 102 T.C. 406, 454-455 (1994) (holding that the time at which a contingent liability that is assumed in an asset acquisition is to be capitalized occurs when the expense is incurred).

We have considered all of the remaining arguments that have been made by the parties for a result contrary to that expressed

herein, and, to the extent not discussed above, they are irrelevant or without merit.

To reflect the foregoing and the concessions of the parties,

<u>Decision will be entered</u>

<u>under Rule 155.</u>